**DONNYBROOK BUILDING SUPPLY, INC., Appellant,**

v.

**INTERIOR CITY BRANCH, FIRST NATIONAL BANK OF ANCHORAGE, a National Banking Association, Appellee.**

No. S–3372.

Supreme Court of Alaska.

Sept. 21, 1990.

John L. Barnes, Three Rivers, Mich., and Steven Cline, Fairbanks, for appellant.

John R. Beard, Beard & Lawer, Anchorage, for appellee.

Before RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Previously this court, by memorandum opinion, reversed a summary judgment in favor of Interior City Branch (ICB), First National Bank of Anchorage. Donnybrook Building Supply (Donnybrook) again appeals, claiming the trial court clearly erred in resolving certain factual questions adversely to it. Donnybrook also challenges the trial court's interpretation of a contract and presents several equitable theories for

relief. Donnybrook also appeals an award of attorney fees to ICB.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The trial court found the salient facts to be as follows. In August and September, 1982 ICB approved three home construction loans to Executive Builders (Builders), a construction firm. The projects for which the money was lent were designated 16–E, 1–P, and 12–A.

Builders obtained supplies from, *inter alia*, Donnybrook. When Builders received the loans for 1–P, 16–E and 12–A, it used a portion of that money to pay Donnybrook, which applied the money in part to outstanding debt incurred by Builders on previously completed projects also financed by ICB. Floerchinger, ICB's real estate lending manager, did not know that there were back accounts between Builders and Donnybrook.

On October 29 Donnybrook issued stop-payment notices [1] to ICB on projects 16–E, 1–P and 12–A. It claimed that $6,374.84, $12,547.71 and $44,267.19 (a total of $63,-189.74) were due it for materials supplied on projects 16–E, 1–P and 12–A respectively. Despite the stop-payment notices, ICB continued to disburse some funds from the 16–E and 1–P accounts until November 23, in the amounts of $8,104.01 and $6,698.69, respectively.[2]

On November 23, Builders, ICB and Donnybrook entered into a written agreement (Agreement) wherein Donnybrook agreed to waive its stop-payment claims against ICB in exchange for an assignment from Builders to Donnybrook of the expected profits from the eventual sale of the projects. Donnybrook drafted this agreement and used information provided by Floerchinger regarding the status of the projects, the amount of loan proceeds remaining, the sales price and expected profit to calculate that the profit from the sales of 16–E, 1–P and 12–A would be $22,000, $28,000 and $9,000 (a total of $59,000) respectively. 16–E was closed on December 3, 1982. Donnybrook received $22,000 from this sale as it anticipated, despite the fact that the sale netted only $14,500. The shortfall was covered with loan funds from the 1–P and 12–A Accounts.

The precise terms of the Agreement and how it differed from its first draft are critical to an understanding of this dispute. The final draft agreed to by Donnybrook, Builders and ICB, provided in paragraph 4:

> [Builders] agrees that in the event Donnybrook is not paid all sums due and owing on these three projects within 90 days from the date of this Agreement [Builders] shall promptly pay all such sums then due and owing in cash with interest from the 28th day of October, 1982, at the rate of one and one-half percent (1.5%) monthly, and reasonable costs and attorney's fees.

The previous draft of this Agreement sought a similar guaranty of payment from ICB. ICB however refused to enter such an arrangement. The final draft omitted an explicit guaranty from ICB.

Also in December other creditors of Builders began to come forward with claims against Builders of which Floerchinger was unaware. These included claims by Lewdon's, Inc., a subsidiary of Donnybrook.

The trial court found that ICB lent only $21,300 for 1–P and 12–A after the Agreement was executed. In rough figures this was $3,500 less than the $24,800 the Agreement represented remained of the undistributed loan proceeds for these projects.

**1.** AS 34.35.062(a)(2) authorizes a construction materials supplier to issue a stop-payment notice to financers after twenty days where the project's financing is not at least 50% bonded and the builder falls thirty days in arrears if there is no payment due date, or more than twenty days late where the contract specifies a payment due date. A lender who disburses loan funds despite a stop-payment notice becomes liable for the amount disbursed or the actual debt, whichever is less. AS 34.35.062(b).

**2.** "Sums withheld under a stop-payment notice may not be disbursed by the lender except under the terms of a written agreement signed by the claimant, owner and general contractor or by order of a court of competent jurisdiction." AS 34.35.062(a)(5).

Lien claims and completion costs on 1–P and 12–A, however, were $60,000 and $25,000 respectively.

On December 17 Builders gave a $103,000 deed of trust to ICB which included the 1–P and 12–A properties. In February Builders filed for bankruptcy and ICB foreclosed on its deeds of trust. 1–P and 12–A were sold that summer for less than the debts they secured.

Donnybrook sued ICB on a variety of theories. In March 1985 the superior court awarded summary judgment on all counts in favor of ICB, but awarded Donnybrook a recovery in equity equal to the amount of 1–P loan proceeds disbursed after the October 29 stop-payment notice. On appeal, this court held by memorandum opinion that Donnybrook had raised genuine issues of material fact and that a legal remedy was available to Donnybrook. Accordingly, this court reversed and remanded for further proceedings. After trial the superior court held that ICB's representations as to Builders' financial status were negligent rather than intentional, that the misrepresentations were not material breaches of the Agreement, and that the Agreement was not a guaranty by ICB that Donnybrook would receive the calculable profits. It further held that since the misrepresentations were negligent and not fraudulent, Donnybrook received more from the sale of 16–E than it would have received had it pursued its stop-payment claims.

## II. DISCUSSION

■ Factual findings are reversed only if "clearly erroneous." Alaska Civil Rule 52. To find a trial court's factual findings clearly erroneous, the court must have a definite and firm conviction that a mistake has been made. *E.g., State v. Doyle,* 735 P.2d 733, 738 n. 7 (Alaska 1987).

## A. THE SUPERIOR COURT DID NOT ERR IN FINDING ICB'S BREACHES OF THE AGREEMENT TO BE IMMATERIAL.

■ Donnybrook contends that the trial court's finding that ICB's misrepresentations and breaches of the Agreement were immaterial in that they caused Donnybrook no damage is clearly erroneous. We are not persuaded in a definite and firm manner that the trial court was wrong in its conclusion.

There are two prongs to Donnybrook's argument: 1) ICB warranted as correct the incorrect information ICB provided it (in effect guaranteeing Donnybrook the profits calculable from those figures) and 2) ICB made payments and allowed claims to arise in violation of the Agreement by taking the $103,000 deed of trust on 1–P and 12–A, and by diverting undisbursed proceeds from projects 12–A and 1–P to insure the completion of 16–E through paying off outside claims against 16–E. Neither Donnybrook's complaint nor the trial court's findings nor the Points on Appeal discuss a claim by Donnybrook that ICB breached the Agreement by taking a $103,000 deed of trust on the 1–P and 12–A projects. Consequently, we decline to address this issue as it is a new claim not properly before this court. *See Sea Lion Corp. v. Air Logistics of Alaska,* 787 P.2d 109, 115 (Alaska 1990).

1. Payments made in violation of the contract.

■ Donnybrook contends that ICB's payment of claims by other creditors for work done on 16–E prior to November 23 made allegedly out of the loan balances for the other two projects, combined with accounting errors, materially interfered with the profits it anticipated from the sale of projects 1–P and 12–A (inferentially, because this materially contributed to the projects' non-completion).

However, the trial court found that the account shuffling engaged in by ICB did not materially increase the risk of the non-completion of projects 1–P and 12–A. The court noted that the Agreement represented that $28,400 remained undisbursed from the 1–P and 12–A loan projects (and thus implicitly represented that this amount would be disbursed). Taking into account various siphonings, diversions and accounting errors, the court found that only $7,900 truly remained in these combined accounts.

Donnybrook does not challenge this finding. The court noted, however, that ICB partially cured its errors by allowing Builders $13,400 of unsecured overdraft credit for the projects, for which ICB would not look to the proceeds of the two remaining projects for repayment. The court found that, accordingly, only $3,500 less than was anticipated was disbursed to the 1–P and 12–A projects. The $3,500 figure appears to be a mathematical error: $28,400 − ($7,900 + $13,400) = $7,100. Nevertheless the trial court's rationale for deeming this shortfall, the end product of ICB's various alleged breaches, to be immaterial remains sound. The court found as a factual matter that "[a]t least a further $25,000 was needed to pay lien claims and completion costs in order to close the sale of 12–A.... At least a further $60,000 was needed to pay lien claims and completion costs in order to close the sale of 1–P...." These findings are supported by Donnybrook's own exhibits. The $7,100 shortfall in loan disbursements was thus a mere drop in the bucket; even if made available neither project could have closed and no proceeds would have been realized by Donnybrook. We are not persuaded that the trial court's finding that ICB's breaches caused Donnybrook no damages is clearly erroneous.

### 2. Breach of "Guaranty."

Donnybrook also claims that ICB breached the Agreement when the information ICB provided Donnybrook (from which Donnybrook calculated the expected profits from the projects) and which formed the basis of the Agreement proved to be incorrect. Donnybrook argues that the incorrect information prevented the completion of the Agreement, and was therefore a material breach, entitling it to damages.[3]

ICB contends that it did not guarantee anything. ICB stresses that it rejected an earlier contract drafted by Donnybrook which contained an explicit guaranty of payment by ICB.

■ This contention requires an interpretation of the Agreement. Interpretation of a contract against a given factual background is a question of law which we examine *de novo*, without deference to the trial court. *E.g., State v. Fairbanks North Star Borough School Dist.*, 621 P.2d 1329, 1332 (Alaska 1981).

■ We hold that ICB did not guarantee the receipt of any proceeds by Donnybrook. First, there is no explicit guaranty in the Agreement by ICB that the information was correct or that proceeds would be received. In fact, the only guaranty explicitly made in the Agreement is made by *Builders*. Paragraph 4 of the Agreement is an explicit and unconditional guaranty *by Builders alone* that Donnybrook would be paid the amounts stated in the Agreement. Our interpretation of this draft is bolstered by the absence of the rejected terms of the prior draft. *See* Restatement (Second) of Contracts § 214(c) (1981) ("Agreements and negotiations prior to ... the adoption of a writing are admissible in evidence to establish ... the meaning of the writing, whether or not integrated...."); *Alaska Diversified Contractors v. Lower Kuskokwim School Dist.*, 778 P.2d 581, 584 (Alaska 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 744 (1990).

In essence, Donnybrook is arguing that since ICB supplied the figures contained in the Agreement and Donnybrook could not have obtained them from anyone else, ICB implicitly guaranteed the correctness of those figures. The goal of this argument, however, is to once again attribute a guaranty of anticipated profits to ICB. The only relevance of these figures to the Agreement is that they can be used to calculate the anticipated proceeds from the sale of the completed projects, which were assigned to Donnybrook. We interpret this contract to guarantee payment only by Builders, however. The contract allocates the risk of the figures being wrong to

---

**3.** The trial court found that figures provided by ICB were material misrepresentations which induced it to enter the Agreement. Whether Donnybrook would be entitled to rescind the Agreement based thereon is not in issue. Donny-

brook has never sought rescission of the Agreement, apparently because that would require it to return the $22,000 it did receive from the sale of project 16–E. *See Knaebel v. Heiner,* 663 P.2d 551, 554 (Alaska 1983).

Builders.[4] Again, it contains an express guaranty of payment by Builders. A previous draft also including a guaranty by ICB was rejected. The correct interpretation is thus that ICB did not implicitly guarantee the receipt of proceeds by Donnybrook. The rejection of a guaranty of payment during negotiations is strong evidence that other language in the contract was not so intended.

### B. DONNYBROOK'S OTHER CLAIMS.

■ Donnybrook renews its claims that it should be entitled to relief under an equitable theory. We rejected this claim in our previous memorandum opinion, holding that equitable relief is available only when there is no adequate remedy at law. *Knaebel*, 663 P.2d at 553. Donnybrook had an adequate remedy at law, specifically for breach of contract. To the extent ICB and not Builders breached the contract, Donnybrook failed to prove that damages resulted.

### C. THE TRIAL COURT DID NOT ERR IN AWARDING ICB ATTORNEY FEES AND COSTS.

Donnybrook claims that the trial court abused its discretion by first deciding that neither party was the prevailing party and then on reconsideration finding ICB the prevailing party and awarding attorney fees against Donnybrook. Donnybrook argues that 1) ICB failed to timely file its objection to the clerk's denial of fees and costs; 2) ICB failed to file a timely appeal of the trial court's final judgment awarding no attorney fees or costs; and 3) ICB submitted improper materials in its Motion for Review.

ICB does not squarely challenge Donnybrook's assertions of untimeliness, but rather contends that the trial court could "relax the rule" and accept the motion even if it was untimely under Alaska Civil Rule 94.

Alaska Civil Rule 94 states:

These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict aderence [sic] to them will work injustice.

■ Donnybrook contends that the motion should have been filed by May 4th. It is within the discretion of the trial court to relax the rules regarding the timely filing of motions for attorney fees. *T & G Aviation, Inc. v. Footh*, 792 P.2d 671–672 (Alaska 1990). We do not have a definite and firm conviction that the trial court was mistaken in so doing, given that Donnybrook was not awarded any damages and that ICB's motion was filed by May 9th. The trial court's award of attorney fees is affirmed.[5]

### III. CONCLUSION

The judgment of the superior court is AFFIRMED.

---

4. Donnybrook also pursues its claim for damages against ICB under a "misrepresentation" theory, arguing that the incorrect project status reports induced it to enter the contract and that *it suffered damages as a result.* Our interpretation of the contract as allocating the risk of the incorrectness of the information to Builders answers this contention as well.

5. Nor do we find anything improper about the materials submitted by ICB in connection with its motion to reconsider the denial of attorney

fees. ICB was clearly the prevailing party; it was the sole defendant in an action where plaintiff took nothing. Yet no fees were awarded. One theory under which ICB might have been denied fees notwithstanding this would be for extremely vexatious conduct. *DeWitt v. Liberty Leasing Co. of Alaska*, 499 P.2d 599, 602 n. 13 (Alaska 1972). ICB is entitled to attempt to forestall such argument under these circumstances.