Ronald COLEMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. A–4158.

Court of Appeals of Alaska.

Feb. 5, 1993.

Suzanne Weller, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia L. Herren, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Ronald Coleman was convicted of both second-degree theft, AS 11.46.130(a)(1), and second-degree criminal mischief, AS 11.46.482(a)(1), after a jury trial in the Anchorage superior court. Coleman appeals, contending that his criminal conduct constituted only one offense under the doctrine announced in *Whitton v. State*, 479 P.2d 302 (Alaska 1970), and that therefore he should have received only one conviction. We affirm Coleman's convictions.

Coleman stole aluminum beams that were structural support for a portable building. He planned to sell the beams to a recycling center for scrap. In order to carry them in his truck, Coleman cut the beams into shorter lengths. Coleman took the cut-up beams to a recycling center, but the recycling center (having been apprised of the theft) refused to accept the pieces of aluminum. After Coleman left, the recycling center notified the police of the attempted sale. Coleman returned home, intending to throw the aluminum away, but the police arrived first and found Coleman's truck loaded with the cut-up aluminum.

Coleman was convicted of second-degree theft for his act of stealing the aluminum beams. He was also convicted of second-degree criminal mischief (intentionally damaging property) for his act of cutting up the beams, thus destroying their usefulness. (Even though the beams were recovered, they could no longer be used as building supports.)

Following the jury's verdicts, Coleman asked the superior court to rule that his two convictions merged for double jeopardy purposes under the rule established in *Whitton v. State*, that two or more statutory violations may constitute the "same offense" and thus may support only one criminal conviction. 479 P.2d at 310–12. The superior court denied Coleman's motion. The court found that Coleman's acts of theft and of damaging the property had, in fact, occurred at two discrete times (i.e., Coleman had first removed the beams from the victim's yard and had later cut up the beams to transport them to the recycling center). Moreover, the court found that the theft and the criminal mischief statutes vindicated discrete social interests. The court construed theft as an act that deprives a property owner of possession, while criminal mischief is an act that destroys the value of the property, whether the property has been carried away or left in the possession of its rightful owner.

With regard to the superior court's factual finding that the acts of theft and criminal mischief occurred at two distinct times, we will reverse only if we are convinced that the finding is clearly erroneous. *Donnybrook Building Supply, Inc. v. Interior City Branch, First Nat'l Bank of Anchorage*, 798 P.2d 1263, 1266 (Alaska 1990). However, with regard to the superior court's rulings on the construction of the two statutes, the identification of the social interests they protect, and the ultimate legal issue of whether Coleman may lawfully be convicted of both crimes, we exercise *de novo* review—that is, we decide this issue independently, without deference to the trial court's decision. *Ford v. Anchorage*, 813 P.2d 654, 655 (Alaska 1991); *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

Coleman does not dispute that there was a time interval between his asportation of the beams and his cutting them into shorter lengths. In fact, Coleman's brief describes his conduct as "theft of aluminum and ... later cutting the same aluminum". We therefore uphold the superior court's finding regarding the separate timing of the two acts.

This brings us to the legal issue: does Coleman's conduct support two distinct convictions, one for stealing the property and the other for intentionally damaging the property? Coleman argues that theft, by itself, necessarily envisions the victim's total loss of the property, because the crime of theft requires proof that the defendant intended to permanently deprive the victim of the property. Thus, Coleman asserts, a defendant convicted of theft is already being punished for depriving the

victim of the complete value of the property, and there is no justification for then convicting the same defendant of damaging the property.

 Coleman's argument, however, misapprehends the crime of theft. Theft requires proof that the defendant *intended* to permanently deprive the victim of the property, but it does not require proof that the victim in fact suffered permanent loss of the property. A defendant can be prosecuted and convicted for theft even though the property is promptly recovered and returned to the victim without any diminution in value. W. LaFave & A. Scott, *Substantive Criminal Law* (1986), § 8.5(b), Vol. 2, pp. 359; R. Perkins & R. Boyce, *Criminal Law* (3rd ed. 1982), pp. 332 & 335.[1]

 Thus, Coleman's argument reduces to this: since the crime of theft requires proof that the defendant intended for the victim to permanently lose the use or value of the property, the double jeopardy clause forbids the government from convicting the defendant for a separate crime when the defendant purposefully damages the property in an attempt to disguise its provenance or make it easier to sell. This is essentially the same argument that the Alaska Supreme Court rejected in *Mead v. State*, 489 P.2d 738, 740–43 (Alaska 1971).

In *Mead*, the defendant relied on *Whitton* to argue that he could not constitutionally be convicted of both burglary and larceny in a building (a form of aggravated theft under Alaska's former criminal code), since the crime of burglary required proof that he had entered the building with the intent to commit theft. The supreme court gave two reasons for rejecting this contention. The first was based on statutory construction: the burglary statute does not require proof of a completed theft. "The gravamen of the burglary statute is the breach [of the building] and entry. The gist of larceny in a building is the theft

itself." 489 P.2d at 741. The supreme court's second argument was grounded on policy: "If conviction for burglary alone were permitted, the successful burglar would receive no greater punishment than the unsuccessful one. If conviction for larceny alone were allowed, ... private areas where our citizens historically have maintained reasonable expectations of greater privacy would receive no more protection against theft than public halls." 489 P.2d at 741–42.

These two rationales apply to Coleman's case. As a matter of statutory construction, the crime of theft requires proof that Coleman carried away the aluminum beams with intent to permanently deprive the owner of his property, but it does not require proof that the owner actually suffered permanent loss of the property. Criminal mischief, on the other hand, does not require proof that Coleman removed the aluminum beams from the owner's possession, but it does require proof that Coleman intentionally damaged the beams. As to social policy, the gravamen of Coleman's theft is that the owner was deprived of his right of possession, while the gravamen of Coleman's criminal mischief is that Coleman intentionally damaged the property, even though it was ultimately restored to its owner.

See *Catlett v. State*, 585 P.2d 553, 558 (Alaska 1978), where the supreme court upheld separate convictions for grand larceny and for stealing or removing parts of an aircraft when the defendant had committed a single act of removing a pair of landing skis from a float plane. Also see *Drahosh v. State*, 442 P.2d 44, 49 (Alaska 1968), holding that a person can be separately convicted for leaving the scene of a motor vehicle accident and for failing to render aid to persons injured in that accident.

---

1. Theft is, in fact, a crime against the victim's right to possess the property, not the victim's right to the value of the property. This is why theft can be committed against a person who does not own the property but who is merely leasing the property or has possession of the property in a fiduciary capacity. Indeed, if the legal owner, acting with an intent to deprive, takes the property from another person who has lawful possession of it, the owner has committed theft. W. LaFave & A. Scott, *Substantive Criminal Law* (1986), § 8.4(c), Vol. 2, pp. 355–56; R. Perkins & R. Boyce, *Criminal Law* (3rd ed. 1982), pp. 296–98.

We recognize that the supreme court's decision in *Hensel v. State,* 604 P.2d 222 (Alaska 1979), stands in apparent contradiction to the result we have reached here. In *Hensel,* the defendant was convicted of burglary for breaking into a dynamite storage bunker and was also convicted of malicious destruction of property for setting off the dynamite, destroying the structure. 604 P.2d at 226–27. The supreme court held that *Whitton* prohibited separate convictions for burglary and for malicious destruction of property. The supreme court's opinion discusses and decides this issue in only two sentences:

> Hensel's last argument on appeal is that [separate convictions] for burglary and malicious destruction of property are not permissible under *Whitton v. State,* 479 P.2d 302 (Alaska 1970). The state concedes error on this point, recognizing that "the burglary and malicious destruction charges constitute essentially one course of conduct designed to accomplish one specific objective—the destruction of the Eagle River bunker and its contents."

*Hensel,* 604 P.2d at 239. Ironically, this language mirrors the words the supreme court used in *Mead* when it reached the opposite result: "In Mead's case, we are presented with two different statutory crimes arising out of a course of conduct which, while consisting of an integrated series of acts leading to an ultimate goal, violates different societal interests." *Mead,* 489 P.2d at 743.

The supreme court failed to cite and distinguish *Mead* when it decided *Hensel.* Moreover, the state conceded error in *Hensel,* an indication that the double jeopardy issue may not have received focused attention. Under these circumstances, we believe that the decision in *Hensel* should be limited to its facts, and that Coleman's case is governed by the decisions in *Mead, Catlett,* and *Drahosh.*

We therefore uphold the trial court's ruling that Coleman could properly be convicted of both theft and criminal mischief. The judgement of the superior court is AFFIRMED.