**Wesley Allen MINCH, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5243.

Court of Appeals of Alaska.

March 14, 1997.

Rehearing Denied April 25, 1997.

---

David W. Rosendin, Ketchikan, for Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

### OPINION

MANNHEIMER, Judge.

Wesley Allen Minch appeals his conviction for fourth-degree misconduct involving a controlled substance (possession of cocaine), AS 11.71.040(a)(3)(A). He contends that his trial was held outside the time limits of Alaska's speedy trial rule, Criminal Rule 45. He also contends that the trial judge mistakenly denied his challenge for cause to one of the prospective jurors.

With regard to the speedy trial issue, we conclude that Minch has no claim; his trial was held within the time limits of Criminal Rule 45. With regard to the challenge of the prospective juror, we agree with Minch that the trial judge should have granted his challenge for cause, but we conclude that Minch has failed to show that he was prejudiced by the trial judge's error.

### The speedy trial issue

On March 8, 1991, Minch was served with a summons charging him with possession of cocaine with intent to deliver.[1] This event started the running of Criminal Rule 45. *See* Criminal Rule 45(c)(1). (For purposes of calculating the Rule 45 time limit, Day 1 was March 9th. *Nickels v. State,* 545 P.2d 163, 165 (Alaska 1976).)

Due to various procedural events and continuances requested by Minch's attorney, Minch's pre-trial motions were not decided until October 1, 1991. (Readers interested in the details will find them in the following footnote.[2]) On October 4th (three days after

---

1. Minch was tried on this charge; the jury found him guilty of the lesser included offense of simple possession of cocaine.

2. Minch was arraigned on March 12th and an attorney was appointed to represent him. Minch was released on his own recognizance. On March 29th, Minch consented to a 21–day tolling of Rule 45 so that his preliminary hearing could be delayed. However, on April 11th (before this 21–day period had expired), Minch was indicted (thus obviating the need for a preliminary hearing).

Minch was to have been arraigned on this indictment on April 17th, but Minch was not present in court. (His attorney had apparently

deciding the pre-trial motions), the superior court held a conference to set the date for Minch's trial.

The court indicated that it would set Minch's trial for November 12th. However, Minch's attorney told the court that the State had made an attractive plea offer and that the "likelihood of this [case] going to trial [was] very low". For this reason, Minch's attorney told the court, he would prefer a later trial date. The court suggested a new trial date of January 21, 1992, and Minch's attorney agreed to this date.

In their briefs, the parties offer competing calculations of how much countable time had elapsed under Rule 45 at the time of this trial scheduling conference. However, it makes no real difference how much time had run on October 4, 1991. At that October 4th conference, Minch's attorney explicitly agreed to a new trial date of January 21, 1992. This date was 109 days in the future— manifestly outside the normal limits of Rule 45. By agreeing to this date, Minch waived his right to demand an earlier trial. *State v. Andrew*, 718 P.2d 471 (Alaska 1986); *Westdahl v. State*, 592 P.2d 1214 (Alaska 1979); *Drake v. State*, 899 P.2d 1385 (Alaska App. 1995). And, as will be explained next, no further time elapsed under Rule 45 between this agreed-upon trial date of January 21, 1992, and the date on which Minch's trial was finally held: May 10, 1993.

Minch's trial was not held on January 21, 1992. Two weeks before the scheduled trial (on January 7th), Minch asked for a continu-

ance until April 21st; he explicitly waived his speedy trial rights until that day.

Nor was Minch's trial held on April 21, 1992. Two weeks before the scheduled trial (on April 7th), Minch's attorney notified the court that there would be no trial—that Minch would be changing his plea. With Minch's approval, the court set a change-of-plea hearing for April 17th.

For reasons that do not appear in the record, the change-of-plea hearing was rescheduled for April 22nd. On that day, Minch's attorney asked for a continuance of the hearing until late May. The court obliged, rescheduling the change-of-plea hearing for May 29th.

On May 29th, the parties appeared in court so that Minch could enter his plea. However, Minch wished to enter a *Cooksey* plea and preserve an issue for appeal. *See Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). The prosecutor told the court that he did not think Minch's issue was dispositive. In order to preserve Minch's right to appeal, the parties agreed that they would prepare a stipulated statement of facts. The idea was that Minch would be tried on these stipulated facts, the court would find him guilty, and then Minch would be free to raise issues on appeal as if he had gone through a full-blown trial.

Because the parties were treating Minch's guilt as a foregone conclusion, the court began to prepare for sentencing. The judge ordered preparation of a pre-sentence report, and he ordered the parties to file their no-

---

made a mistake about the scheduled day.) The arraignment was therefore continued until April 22nd, at which time Minch pleaded not guilty. The superior court set an omnibus hearing for May 2, 1991.

For reasons that are not explained in the record, the omnibus hearing was not held until May 10th. At that time, Minch's attorney asked the court to extend the deadline for filing pretrial motions. The court gave Minch until June 21st, and trial was set for September 25th.

On June 21st, the parties stipulated to a further extension of the motions deadline; the court extended the deadline to July 2nd. On July 2nd, Minch's attorney asked that the deadline be extended to July 15th. Minch's attorney missed the July 15th deadline. On July 29th, Minch's attorney belatedly asked for yet another extension of the motions deadline.

Finally, on August 2, 1991, Minch filed a motion seeking suppression of the evidence against him. The State filed its opposition two weeks later. The court held an evidentiary hearing on this motion on August 27th, but deferred ruling until a necessary transcript could be obtained. From the record, it appears that the transcript was received on September 3rd, at which time Minch's motion was formally under advisement.

With Minch's suppression motion under advisement, Minch's trial (previously scheduled for September 25th) was not held. On September 26th, the court granted Minch permission to travel to Idaho.

The superior court denied Minch's suppression motion on October 1, 1991.

tices of aggravating and mitigating factors by June 12th. The court scheduled a hearing on aggravating and mitigating factors for June 26th, and the court scheduled the sentencing hearing for July 27th.

The State filed its aggravators on June 2nd. Minch filed his mitigators on June 16th. Then, on June 25th (the day before the scheduled hearing on aggravators and mitigators), the parties stipulated to continue that hearing until July 2nd. The parties later stipulated to another continuance until the week of July 20th. On July 23rd, Minch asked for yet another continuance of this hearing. The court rescheduled the aggravators/mitigators hearing for August 4th.

As it turned out, the August 4th hearing was not devoted to aggravators and mitigators; Minch, who was supposed to be in attendance, did not show up. (His attorney told the court that Minch had to be at work that day.) Instead, the parties discussed the information that should appear in the pre-sentence report. Apparently because there had been no trial and the parties had yet to prepare their stipulated statement of facts, the court directed the parties to file affidavits for purposes of the pre-sentence investigation.

The parties did not return to court until November 30th. The judge expected to sentence Minch at that time, but Minch's attorney objected. Minch told the court that he and the State had never prepared the stipulated set of facts for the court to use in finding Minch guilty. In fact, the defense attorney said, Minch had decided to reject the State's offer: he now wished to go to trial. In response, the court set a trial date of December 29, 1992.

On December 17th, the parties appeared in court and Minch announced that he intended to seek dismissal of the charge based on a violation of Rule 45. The court pointed out that litigation of a Rule 45 motion would probably "string [the proceedings] out" because the court would have to set a new motion schedule. Minch said he was agreeable to this; he asked the court to reschedule the trial for March 22, 1993, and he waived his rights under Rule 45 until that date. The court ordered Minch to file his Rule 45 motion by December 28th.

For reasons that are not explained in the record, Minch did not file his Rule 45 motion until March 10, 1993. (Trial was scheduled for March 22nd.) When the parties appeared in court on March 19th for the trial call, the State argued that the court should deny Minch's Rule 45 motion because it was so tardy. Given these unresolved issues, the judge canceled the jury trial set for March 22nd; instead, he calendared a motion and trial-setting conference for March 22nd.

At this conference on March 22nd, Minch waived his speedy trial rights and agreed to a new trial date of May 10, 1993. Minch was finally tried on May 10, 1993, more than two years after he was served with the summons.

■ Despite this two-year delay in bringing Minch to trial, we conclude that Rule 45 was not violated. As explained above, Minch agreed to a trial date of January 21, 1992 when he knew that this date fell outside the normal Rule 45 time limit. Then, with this January trial date approaching, Minch agreed to an even later trial date: April 21, 1992. Thus, the Rule 45 "clock" could not expire until after April 21st.

The next significant event occurred on April 7, 1992 (two weeks before Minch's scheduled trial). On that day, Minch announced to the court that he would be changing his plea. When Minch declared that he intended to change his plea, Rule 45 was satisfied. This court resolved this issue ten years ago in a nearly identical case, *Morris v. State,* 734 P.2d 1012 (Alaska App.1987).

The defendant in *Morris* told the court that he intended to waive trial and change his plea. A change-of-plea hearing was calendared, but the hearing was continued when the parties could not agree on the particulars of Morris's prior convictions. 734 P.2d at 1013. Ultimately, the plea agreement fell apart; the defendant never changed his "not guilty" plea, and the court set a new date for the defendant's trial. *Id.* at 1013–14. As that trial date approached, the defendant filed a motion to dismiss the case under Rule 45. When the trial court denied this motion, Morris pleaded no contest, reserving his

right to appeal the Rule 45 issue. *Id.* at 1014.

On appeal, this court held that Morris's announcement that he intended to change his plea "had the same effect ... as an entry of plea". *Morris,* 734 P.2d at 1014. That is, Morris's announcement terminated the running of Rule 45.

This same rule applies to Minch's case. When Minch announced on April 7, 1992 that he intended to change his plea, this satisfied Rule 45. Minch's case does, however, involve a few additional wrinkles that merit discussion.

■ Minch's change of plea was to have occurred on April 22, 1992. But when the parties appeared in court on that day, Minch asked the court to continue the change-of-plea hearing until May 29, 1992. And, as explained above, when the parties came to court on May 29th, Minch announced that he would not be entering a *Cooksey* no contest plea because a *Cooksey* plea would not allow him to preserve non-dispositive issues for appeal. Instead, Minch told the court, he now agreed to be tried—and to be found guilty—on a stipulated statement of facts that the parties would draw up in the near future. Based on Minch's announcement, the court began the sentencing process—ordering a pre-sentence report and setting a filing deadline for the parties' proposed aggravating and mitigating factors.

While it is true that Minch told the court on May 29th that he would not be entering a no contest plea, Minch did not tell the court that he now wished to go to trial. Instead, Minch told the court that he had reached a revised agreement with the State that would allow him to preserve non-dispositive issues for appeal. Under this revised agreement, the court would find Minch guilty on stipulated facts.

As explained above, the trial court did not view this revision as a material change in the agreement. The court's response to Minch's announcement (that he wished to be found guilty on stipulated facts) was to order prep-

aration of a pre-sentence report and to set a filing deadline for the parties' proposed aggravators and mitigators.

We, too, conclude that this change in the agreement was of no consequence. Under either version of the agreement (*Cooksey* plea or a guilty verdict on stipulated facts), Minch intended for the court to find him guilty without trial of the factual merits of the State's case. For Rule 45 purposes, either version of the agreement had the same effect as a formal change of plea. Thus, any delays following Minch's initial change-of-plea announcement on April 7, 1992 are irrelevant. As this court declared in *Morris,* 734 P.2d at 1014, Rule 45 "is a speedy-trial rule, not a speedy sentencing rule".

■ The next relevant event occurred six months later, on November 30, 1992. On that day, Minch told the court that his agreement with the State had collapsed and that he now intended to re-assert his right to trial. By virtue of Minch's decision, the Rule 45 clock was extended by a reasonable amount of time (a minimum of 30 days) to allow the superior court to work Minch's case back into its trial calendar. *See Petersen v. State,* 838 P.2d 812, 814–15 (Alaska App. 1992).[3]

At a hearing two weeks later, Minch agreed to a trial date of March 22, 1993. Then, on March 22nd, Minch explicitly agreed to a new trial date of May 10, 1993— which is when his trial finally took place. This trial date did not violate Rule 45.

### Minch's challenge to the prospective juror

■ One of the prospective jurors called for Minch's case was Michael Louthan, a police officer at the Ketchikan Gateway Borough Airport. During voir dire, the prosecutor asked Louthan whether his job would affect how he viewed the case. Louthan replied, "Somewhat." Louthan explained that he would probably give a fellow law enforcement officer's testimony more weight than testimony offered by a person who was not a law enforcement officer, although he

---

**3.** Under the current version of Rule 45(c), the speedy trial clock is reset to 120 days and begins running afresh when a defendant is allowed to withdraw a plea of guilty or no contest. *See* Rule 45(c)(6). This current version of the rule did not take effect until July 1993.

would not "have [any] problem" deciding the case in favor of the defendant if it turned out that the police had made a mistake.

During the defense portion of the voir dire, Minch's attorney asked Louthan about his statement that he would give more weight to a fellow officer's testimony. Louthan replied that he had an objective basis for this preference: "[I]n ... over ten years of law enforcement," Louthan said, he had never "[been given] any false information ... by a law enforcement officer[.]"

Defense counsel asked the court to dismiss Louthan from the panel. The court denied this challenge for cause. Defense counsel then again asked Louthan if he would favor the testimony of a police officer over the testimony of someone he did not know. When Louthan responded that this possibility did exist, Minch's attorney again requested that Louthan be dismissed for cause.

Before deciding Minch's challenge, the court asked Louthan if he could be a fair juror. Louthan replied, "Yes." Apparently based on Louthan's answer, the court again denied Minch's challenge for cause.

When a party asserts on appeal that the trial judge should have granted a challenge for cause to a prospective juror, this court reviews the trial judge's decision under the "abuse of discretion" standard. *Mitchell v. Knight,* 394 P.2d 892, 897 (Alaska 1964); *Young v. State,* 848 P.2d 267, 269 (Alaska App.1993). Here, we conclude that the trial judge abused his discretion.

Alaska Criminal Rule 24(c) lists the grounds for challenging a prospective juror. Under Rule 24(c)(3), a prospective juror should not serve on the jury if they "show[ ] a state of mind which will prevent [them] from rendering a just verdict". Under Rule 24(c)(4), a prospective juror should not serve if they "[have] opinions ... which would improperly influence [their] verdict". Officer Louthan candidly admitted that he would weigh the testimony of police officers more heavily than the testimony of other people. Louthan's predisposition to believe police testimony was manifestly relevant when evaluating whether he should serve as a juror in a criminal case.

True, Louthan declared that he could decide Minch's case fairly. However, our review of Louthan's entire voir dire leaves us with the firm impression that Louthan mistakenly believed that his preference for police testimony was entirely consistent with a "fair" decision. The trial judge should have granted Minch's challenge for cause.

▪ Nevertheless, we conclude that Minch was not prejudiced by this error. After the superior court denied his challenge for cause, Minch used one of his peremptory challenges to remove Louthan from the panel.

Minch argues that, because he ultimately used all of his peremptory challenges, and because he was forced to use one of these peremptories to get rid of Louthan, we must presume that he was prejudiced by the trial judge's error. In other words, Minch asks us to make two assumptions, one factual and one legal. The factual assumption is that, had Minch possessed one more peremptory challenge, he would have exercised it against one of the jurors who ultimately decided his case. The legal assumption is that, because this hypothetically pre-emptible juror sat on Minch's case, Minch suffered prejudice.

We are unwilling to adopt Minch's reasoning. First, there is nothing in the record to support the assumption that Minch would have used another peremptory challenge if he had had one. Minch never asked the superior court to give him additional peremptory challenges, nor did he argue in any other fashion to the trial court that the jury-selection process had left him with a panel that could not be fair. Even on appeal, Minch makes no argument that the jurors who decided his case were unable to be fair.

Moreover, even assuming that Minch would have exercised one more peremptory challenge if he had had one, this fact alone is not sufficient to demonstrate prejudice. As the supreme court clarified in *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin,* 828 P.2d 745 (Alaska 1992),

> Peremptory challenges are ... not an end in themselves, but rather a means to an end: an impartial jury. Where a party receives an impartial jury, the issue of peremptories is moot. The question is ...

whether [the party challenging the trial court's ruling] obtained a fair jury despite the imbalance of peremptories.

*Bohna,* 828 P.2d at 762–63.

In other words, it is not enough for Minch to prove that the trial judge should have dismissed Louthan for cause, thereby giving Minch one more peremptory challenge for potential use on another juror. "A party has a right to an impartial jury, [but] not to have certain individuals on the jury[.]" *Bohna,* 828 P.2d at 763 n. 46. In addition to proving that the trial judge made an erroneous ruling on his challenge for cause, Minch must also demonstrate some reason to believe that one or more of the jurors who decided his case were, in fact, not fair.

Minch makes no argument and offers nothing in the record to show that the jurors who comprised his jury panel were unfair. We therefore conclude that, although the trial judge should have granted Minch's challenge of Louthan, Minch was not prejudiced by this error.

*Conclusion*

Minch was brought to trial within the time limits of Criminal Rule 45. The trial court should have dismissed prospective juror Louthan for cause, but Minch was not harmed by this error. Accordingly, the judgement of the superior court is AFFIRMED.