**William R. HAMMOCK, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7800.

Court of Appeals of Alaska.

July 12, 2002.

---

23. *Id.*

David Graham, Graham Law Firm, Sitka, for Appellant.

Kurt C. Twitty, Assistant District Attorney, Sitka, Richard Svobodny, District Attorney, Juneau, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## *OPINION*

COATS, Chief Judge.

A jury convicted William R. Hammock of second-degree criminal trespass [1] for remain-ing on the premises of the Rookies Sports Bar & Grill in Sitka after he was repeatedly asked to leave. Hammock argues that a new trial is necessary because he was prejudiced by the trial court's refusal to excuse two jurors he challenged for cause. He also claims that the court should have granted his motion for judgment of acquittal because the criminal trespass statute does not prohibit his conduct: leaving the Rookies premises each time he was asked to leave, then returning later. Lastly, Hammock argues that the court erred by not instructing the jury that it must find his conduct "unlawful."

After reviewing the record, we conclude that the court abused its discretion by not excusing one prospective juror for cause. However, because Hammock used a peremptory challenge to excuse that prospective juror, he did not serve on the jury and Hammock was not prejudiced. We reject Hammock's other claims and affirm the verdict.

### *Facts and proceedings*

The evening of March 11, 2000, Brent Denkinger, the owner of the Rookies bar in Sitka, told Hammock to leave the bar because Hammock was with an underage person and was involved in a conflict with other bar patrons. Hammock left the bar but remained outside in the parking lot. Denkinger then called the police, but Hammock had left by the time the police arrived. Peter Menendez, the bartender, testified that Hammock was told to leave "[a]t least for the night."

About thirty minutes later, Hammock showed up outside the bar and Denkinger called the police again. Before the police arrived, Hammock became involved in a fight in the parking lot with the same bar patrons. This time Sitka Police Officer David E. Johnson told Hammock at Denkinger's request that "he was no longer welcome ... in Rookies or ... on their property" and that he

would be arrested for criminal trespass if he returned.

Thirty to forty-five minutes later, Hammock came back to the Rookies bar a third time and was told to leave by Menendez and the manager working the front door. Hammock left the bar but "went outside and stood around." The police were called again. When Officer Johnson arrived, Hammock was "at the front door trying to get into the establishment." Officer Johnson arrested Hammock without telling him to leave the premises.

Hammock was charged with second-degree criminal trespass. Before trial, Hammock challenged two prospective jurors for cause, arguing that they were predisposed to find him guilty if he chose not to take the stand and testify at trial. The district court denied both challenges after the prospective jurors stated that they could set aside their predispositions and follow the law. Hammock then used his three peremptory challenges, removing one of the jurors that he had challenged for cause. The jury convicted Hammock of second-degree criminal trespass.

Hammock appeals.

### *Discussion*

#### *The challenges for cause*

Hammock argues that the court abused its discretion by not excusing the prospective jurors he challenged for cause. Hammock challenged two jurors because they were equivocal during *voir dire* about their ability to follow the court's instructions to draw no inference of guilt if Hammock did not testify at trial.

Alaska Criminal Rule 24(c) provides that a prospective juror should not serve on the jury if the person "shows a state of mind which will prevent the person from rendering a just verdict" or "has opinions ... which would improperly influence the person's verdict." The trial court has discretion to grant or deny a challenge for cause and this court will interfere with that discretion "only in exceptional circumstances and to

---

1. AS 11.46.330(a)(1).

prevent a miscarriage of justice."[2] To support the court's decision to deny a challenge for cause, the record need not reflect "unequivocal and absolute" impartiality on the part of a juror because the truly honest juror likely could not claim "unequivocally and absolutely that his or her biases will have no effect on the verdict."[3] As the supreme court explained in *Sirotiak v. H.C. Price Company*,[4] "[a]ll that is required of a prospective juror is a good faith statement that he or she will be fair, impartial and follow instructions."[5]

Hammock first challenged Alan Blankenship, a state maintenance employee in Sitka, after Blankenship gave conflicting and ambiguous responses about his ability to draw no inference of guilt if Hammock chose not to testify at trial. At various points during *voir dire*, Blankenship indicated he would have difficulty not drawing an inference of guilt if Hammock decided not to testify, stating "I would probably in the back of my mind be thinking he's guilty" and "I don't think I'd be able to put [the inference of guilt] out of my mind." At other points, Blankenship testified that he would be able to set aside the inference of guilt if instructed to do so by the court. But each of these statements was followed by a qualifying remark suggesting that Blankenship might disregard the court's instructions. For example, Blankenship said "I can set it aside but it's still gonna be there. I mean, nobody's gonna know what— why I decide what I decide." Later, when Hammock's attorney asked Blankenship again if he could follow the law, Blankenship said: "I believe so. Nobody's going to find out either way, right?" Blankenship gave similar responses when questioned by District Court Judge Larry C. Zervos, stating first that "I believe I can [follow the law]" but then adding that "what I say and what I do are gonna be probably—could be two

different things." Finally, Blankenship made one unequivocal statement—"I will apply the law as instructed"—and Judge Zervos denied Hammock's challenge for cause.

■ Although the court eventually did elicit a statement from Blankenship that he could follow the law, the *voir dire* considered as a whole undermines any conclusion that this statement was made in good faith. Blankenship repeatedly indicated he might disregard the court's instructions because no one would find out he had done so; he also suggested he might ignore his oath to follow the law because "it's only illegal when you get caught." Given these responses, Judge Zervos's continued questioning "seemed tailored to rehabilitate [him] as a qualified juror rather than to ascertain [his] willingness to perform [his] duty as a juror in a fair and impartial manner."[6] We conclude that the court abused its discretion by denying Hammock's challenge of Blankenship for cause.

■ Hammock challenged a second juror, Shelby Albrecht, for the same reason. Albrecht stated during *voir dire* by Hammock's attorney that she did not know if she could draw no inference of guilt from Hammock's decision not to testify. Later, she said she "definitely" would draw such an inference, even if the judge instructed her otherwise. Finally, she reversed course, stating equally unequivocally that she could follow the law. The trial judge observed Albrecht's demeanor and was entitled to take her indecision and eventual change of heart at face value.[7] Although additional *voir dire* might have helped ascertain why Albrecht had changed her mind, the court reasonably could have concluded that Albrecht believed in good faith that she could set aside her predispositions and decide the case in an impartial manner.[8] No more is required.[9] We conclude that the court did not abuse its discre-

**2.** *See Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1275 (Alaska 1988) (quoting *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964)).

**3.** *See id.* at 1277.

**4.** 758 P.2d 1271.

**5.** *Id.* at 1277.

**6.** *See Beck v. Dep't of Transp. and Pub. Facilities*, 837 P.2d 105, 112 n. 4 (Alaska 1992).

**7.** *See Young v. State*, 848 P.2d 267, 270 (Alaska App.1993).

**8.** *See Sirotiak*, 758 P.2d at 1277 (finding no abuse of discretion where court denied challenge for cause against prospective juror who first indicated that proof by a preponderance of the evidence would not satisfy him, but then stated that he would be able to understand the judge's instructions and follow them).

**9.** *See id.*

tion by denying Hammock's challenge of Albrecht for cause.

Hammock argues that he was prejudiced by Judge Zervos's refusal to grant his challenges for cause because he exhausted his peremptory challenges. Hammock used one peremptory challenge to excuse Blankenship and his remaining two peremptory challenges to dismiss prospective jurors whom he had not challenged for cause. Hammock did not ask the court to grant any extra peremptory challenges. Hammock argues that if the court had granted his challenge for cause against Blankenship he would have used his last peremptory to remove Albrecht. Hammock ultimately did not testify, and he contends that Albrecht's presence on the jury was prejudicial because the case was close and Albrecht was predisposed to infer guilt from his failure to take the stand.

■ Even assuming Hammock would have exercised a peremptory challenge to excuse Albrecht from the jury, this fact alone does not establish prejudice. To show prejudice, Hammock must "demonstrate some reason to believe that one or more of the jurors who decided his case were, in fact, not fair." [10] As discussed above, the court did not abuse its discretion in deciding that Albrecht could be an impartial juror. Therefore, we reject

Hammock's claim that he was prejudiced by her presence on the jury.

### The motion for judgment of acquittal

■ Hammock next argues that the district court should have granted a motion for judgment of acquittal because the second-degree criminal trespass statute on its face does not prohibit the conduct he engaged in—leaving premises that are open to the public (the Rookies bar) each time he was asked to leave, and then returning later.[11] Underlying this claim is Hammock's contention that the court should have instructed the jury that it was legal to *return* to a public place after being told to leave.

Under AS 11.46.330, a person commits second-degree criminal trespass if the person "enters or remains unlawfully . . . in or upon premises." [12] To "enter or remain unlawfully" is defined, *inter alia*, as "fail[ing] to leave premises . . . that [are] open to the public after being lawfully directed to do so personally by the person in charge." [13]

■ In reviewing a trial court's decision on a motion for judgment of acquittal, we view the evidence in the light most favorable to the prevailing party.[14] We reverse a decision to deny such a motion only if "fair-minded persons would *have* to agree that the state had failed to carry its burden of proof

---

10. See *Minch v. State*, 934 P.2d 764, 770 (Alaska App.1997).

11. The parties do not dispute that the Rookies bar was "open to the public." *Cf. Arabie v. State*, 699 P.2d 890, 893 (Alaska App.1985) (treating grocery and liquor store as building that was open to the public for purposes of AS 11.46.350(a)).

12. AS 11.46.330 provides:

Criminal trespass in the second degree. (a) A person commits the crime of criminal trespass in the second degree if the person enters or remains unlawfully
 (1) in or upon premises; or
 (2) in a propelled vehicle.
 (b) Criminal trespass in the second degree is a class B misdemeanor.

13. *See* AS 11.46.350, which provides:

Definition. (a) As used in AS 11.46.300—11.46.350, unless the context requires otherwise, "enter or remain unlawfully" means to
 (1) enter or remain in or upon premises or in a propelled vehicle when the premises or propelled vehicle, at the time of the entry or remaining, is not open to the public and when the defendant is not otherwise privileged to do so;
 (2) fail to leave premises or a propelled vehicle that is open to the public after being lawfully directed to do so personally by the person in charge; or
 (3) enter or remain upon premises or in a propelled vehicle in violation of a provision in [a protective] order issued or filed under AS 18.66.100—18.66.180 or issued under former AS 25.35.010(b) or 25.35.020.

14. *See Snyder v. State*, 661 P.2d 638, 641 (Alaska App.1983).

beyond a reasonable doubt." [15] The interpretation of a statute is a question of law we review *de novo*.[16]

Hammock's argument that he is entitled to a judgment of acquittal hinges on his view of the facts and his interpretation of the trespass statute. Hammock asserts that the evidence in his case shows that he left the Rookies Bar every time he was ordered to, although he quickly returned each time. Hammock then argues that this conduct does not constitute trespass. He points out that, as defined in AS 11.46.350(a)(2), a person "remain[s] unlawfully" on another's property if the person "fail[s] to leave [the] premises ... after being lawfully directed to do so." Hammock asserts that, under this definition, a person who is asked to leave another's property commits no trespass so long as the person promptly leaves the boundaries of the property before returning.

But viewing the evidence in the light most favorable to the State (as we must), a reasonable jury could conclude that Hammock did not depart from the Rookies property on the third (*i.e.*, the final) occasion when he was ordered to leave. Rather, Denkinger testified that Hammock left the building but then "went outside and stood around." When the police arrived a little later, Hammock was "at the front door trying to get into the establishment." Viewing this evidence (and the inferences that might reasonably be drawn from it) in the light most favorable to the State, Hammock never left the property on this final occasion—thus committing trespass even under his own interpretation of the statute.

Moreover, we reject Hammock's interpretation of the trespass statute. The underlying issue is whether a person who is asked to depart from property truly "leaves" within the meaning of the statute if the person departs for only a few minutes and then returns.

In *Turney v. State*,[17] this court limited the application of Alaska's trespass statute with regard to public buildings (for example, a courthouse). We held that the supervisors of public buildings could lawfully direct a person to leave the premises for a time, but—in the absence of a special statute giving them this power—they could not bar a person from ever returning to the property.[18] Yet despite this limitation on the government's power to permanently bar citizens from its buildings, we noted that people could properly be convicted of trespass at a government building if they either ignored a "reasonably contemporaneous" request to leave or if they "heed[ed] the directive to leave but then return[ed] to the public facility after only a short while."[19]

Under the interpretation of the trespass statute adopted in *Turney*, Hammock's conduct—leaving, then returning within minutes—would have constituted trespass even if the property involved had been a government building open to the public. But the property involved in this case was a privately owned bar and restaurant. The owners of private commercial property have at least as much authority to remove unruly patrons as the supervisors of government buildings. Indeed, we noted in *Turney* that under New York law (one of the primary sources of Alaska's trespass and burglary statutes),

> [o]wners of private property (even private property open to the public for commercial purposes) may order a person to leave and never come back. If the person returns, he or she can be convicted of trespass for the mere act of returning.[20]

Thus, even under Hammock's view of the evidence—*i.e.*, even assuming that he physically departed from the premises for brief periods of time before returning—a reasonable jury could conclude that Hammock was guilty of trespass for ignoring a reasonably contemporaneous request to leave.

### The jury instructions

 Hammock next argues that the district court erred by not instructing the jury

---

**15.** *See id.* (emphasis in original).

**16.** *See Sosa v. State,* 4 P.3d 951, 953 (Alaska 2000).

**17.** 922 P.2d 283 (Alaska App.1996).

**18.** *Id.* at 288.

**19.** *Id.*

**20.** *Id.* at 287.

that it must find that his conduct was "unlawful" and that he disobeyed a "lawful" order to leave the Rookies premises. Hammock argues that a finding of unlawfulness is an essential element of the offense, and that the court's error prejudiced him because it relieved the state of its burden to establish every element.

Jury Instruction No. 15 provided that: "To 'enter or remain *unlawfully*' means to fail to leave premises that [are] open to the public after being *lawfully* directed to do so personally by the person in charge."[21] In closing argument, Hammock's counsel specifically asked the jury to look to Instruction No. 15 to determine if Hammock "knowingly entered or remained on the premises"—that is, to determine if he was guilty of second-degree criminal trespass. Thus, Hammock's claim that the court failed to instruct the jury that it must find Hammock's conduct unlawful is without merit.

█ Hammock also argues in his reply brief that he was prejudiced by the court's failure to instruct the jury that it must find that he disobeyed a lawful order to leave because the order that he leave the Rookies premises was based on his Native heritage.[22] But as noted above, the jury was instructed that it must find that Hammock ignored a lawful order to leave. Furthermore, Hammock waived these specific claims of prejudice because he did not raise them below or in his opening brief.[23]

Because the jury was instructed that it must find Hammock's conduct unlawful, Hammock cannot claim that he suffered prejudice. We thus reject Hammock's claim.

*Conclusion*

The judgment of the district court is AFFIRMED.

---

21. Emphasis added.

22. New York courts have defined "lawful" in this context as mandating proof that the "particular order or exclusion had a legitimate basis" and was not "premised on the exclusion of a person from a place of public accommodation on the basis of race, creed, color, national origin, sex, disability, or marital status." *See* William C. Donnino, *Practice Commentary*, N.Y. Penal Law § 140.00(5), 11 (McKinney 1999).

23. *See Petersen v. Mutual Life Ins. Co.*, 803 P.2d 406, 411 (Alaska 1990); *Mossberg v. State*, 624 P.2d 796, 804–05 (Alaska 1981).