Ronald YOUNG, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3946.

Court of Appeals of Alaska.

Feb. 26, 1993.

Jeffrey D. Mahlen, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Cynthia L. Herren, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

Following a jury trial, Ronald Young was convicted of one count of burglary in the second degree, in violation of AS 11.46.310, and one count of criminal mischief in the second degree, in violation of AS 11.46.-482(a)(1). Superior Court Judge Charles K. Cranston sentenced Young to four years with one year suspended for second-degree burglary and to a concurrent term of two years, all suspended, for second-degree criminal mischief. Young appeals, arguing that the trial court erred in denying his motion to excuse a juror for cause, in failing to grant his motion for judgments of acquittal, and in entering separate convictions against him for second-degree burglary and second-degree criminal mischief. We affirm.

## FACTS

On the night of June 8, 1990, a Friday, school custodian Oma Gilbreth stopped by Chapman Elementary School in Anchor Point to change tapes in the school video tape machines. As Gilbreath walked down a hallway inside the school, he looked through the window to the secretary's office and noticed coins and a string of keys strewn on the floor; they had not been there earlier that afternoon.

Gilbreath walked around to the office door. He found the door open, with its window smashed. A rock was lying in the middle of the secretary's office. As Gilbreath entered the office, he saw that the door to the principal's office—an inner office—was open, and he heard somebody rummaging around in a desk. Yelling in a loud voice, Gilbreath entered the principal's office and turned on the light. There, he discovered Ronald Young cowering behind a bookcase. Gilbreath placed Young in the secretary's office and called the police. By the time the police arrived, Young, who appeared to be intoxicated, had fallen asleep.

Alaska State Trooper Corporal Daniel Weatherly responded to the scene and investigated the break-in. Weatherly discovered, in addition to the broken window in the door to the secretary's office, that the door to the principal's office had been forced open; it was splintered around the door jamb. A drawer in the secretary's desk and two drawers in the principal's desk had been opened. Weatherly determined that Young had broken into the building through the arctic entryway at the rear of the school: the locked outer door of the entryway had been smashed open; the window panes of both the outer door and inner door (a free-swinging door with no lock) had been shattered.

The following Monday morning, June 11, school officials discovered that the exterior window of the music room, which is adjacent to the rear entryway, had also been broken, apparently by a thrown rock.

Young was charged with second-degree burglary for breaking and entering into the school with the intent to steal; he was charged with second-degree criminal mischief for the damage he caused during the break-in.

## JUROR CHALLENGE

During jury selection in Young's case, one prospective juror, Mack Thompson, informed the court that, through his work as an emergency medical technician, he had become acquainted with Trooper Weatherly. Thompson vacillated as to his ability to be fair in evaluating Weatherly's testimony. In response to initial questioning by the court, he indicated that his acquaintance with Weatherly was professional in nature and would not prevent him from treating Weatherly's testimony the same as that of other witnesses. After inquiry by defense counsel, however, Thompson indicated that he thought Weatherly to be a trained and highly competent officer; Thompson acknowledged that it was "pos-

sible" that he "might have some difficulty just evaluating [Weatherly's] credibility based solely on what [he] hear[d] on the witness stand."

Young challenged Thompson for cause, alleging that Thompson would be unable to set aside his acquaintance with Weatherly in evaluating Weatherly's credibility as a witness. Further questioning of Thompson by the court, however, ultimately resulted in the following exchange:

Q: [W]ould you be able to follow the instruction that the court will give you on how to judge the credibility of the witnesses and would you be able to evaluate Corporal Weatherly's testimony based upon what appears to you to be reasonable inferences to draw from courtroom presentations rather than matters that have occurred outside the courtroom? Do you understand my question?

A: Yes, I do. I believe I could make a valid decision on—on his testimony whether—if it conflicted with another testimony, yes.

Q: And based upon matters that occur within the courtroom?

A: Yes. With the ex—you know, with the exception of—and I think all of—all people have a prejudice toward believing police officers.

Q: Well, in other words, would you give his testimony more weight solely because he is a police officer? He'll undoubtedly testify as to what his background is and you can take his background into consideration in evaluating his testimony. That is the training he has received and so on. But taking the matter solely because he is a police officer without any reference to what background information might be given regarding him, or what he might actually tell you on the witness stand, are you going to simply assume without any further information that because he's a police officer he's going to be more credible?

A: No, I—I—I don't believe I'd assume that. I believe I could take his—his testimony and treat it without preju-dice of what I—my previous contact with Corporal Weatherly.

Based upon Thompson's answers, the court denied Young's challenge for cause.

Young eventually exercised one of his peremptory challenges to excuse Thompson. Young exhausted all of his peremptory challenges in the course of jury selection. He did not request any additional challenges, and the court offered none. On appeal, Young claims that the trial court erred in denying his motion to excuse Thompson for cause.

■ A trial court's failure to grant a challenge for cause based on a claim of potential bias is reviewed for abuse of discretion and will be reversed "only in exceptional circumstances and to prevent a miscarriage of justice." *Dalkovski v. Glad*, 774 P.2d 202, 205 (Alaska 1989) (quoting *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964)). *See also Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1275 (Alaska 1988).

Young argues that Thompson's preconceived notion towards believing and trusting police officers in general and his entrenched bias toward believing and trusting Weatherly in particular rendered Thompson unfit to sit as a juror. He contends that the trial court "guided" Thompson to the "correct" responses. According to Young, the court placed undue weight on Thompson's statements that he could be fair and impartial.

■ Young asserts that, when a juror is familiar with a party or witness, the trial court must view that juror's claim of impartiality with skepticism. Young relies on *Jerrel v. State*, 756 P.2d 301, 305 (Alaska App.1988); *Mallott v. State*, 608 P.2d 737, 748 (Alaska 1980); *Oxereok v. State*, 611 P.2d 913, 919 (Alaska 1980); *Nelson v. State*, 781 P.2d 994, 997 (Alaska App.1989); *Chase v. State*, 678 P.2d 1347, 1351 (Alaska App.1984). These cases, however, are inapposite: all involved extensive and potentially prejudicial pretrial publicity—an exceptional situation requiring unique attention to the issue of potential jury bias.

The ordinary rule, applicable here, is that "bias on the part of prospective jurors will

never be presumed and the challenging party bears the burden of proof." *City of Kotzebue v. Ipalook,* 462 P.2d 75, 77 (Alaska 1969). In assessing a challenge for cause based on bias, the trial court is ordinarily entitled to take at face value the challenged juror's responses to questioning on voir dire; the court may deny a challenge when the juror makes "a good faith statement that he or she will be fair, impartial and follow instructions." *Sirotiak v. State,* 758 P.2d at 1277. *See also Mitchell v. Knight,* 394 P.2d at 897; *Malvo v. J.C. Penney Company, Inc.,* 512 P.2d 575, 578–79 n. 2 (Alaska 1973).

■ Young in effect asserts that we must reverse the trial court's ruling if the record provides any indication of potential bias, and unless it contains absolute and unequivocal assurance of impartiality. The Alaska Supreme Court has expressly rejected this view:

> First, we conduct our review of the record looking only for abuse of discretion. To require the cold record to reflect "unequivocal and absolute" impartiality intrudes on the discretion granted trial courts because the judge is present and observing proceedings. Second, we doubt the truly honest juror could state unequivocally and absolutely that his or her biases will have no effect on the verdict. All that is required of a prospective juror is a good faith statement that he or she will be fair, impartial and follow instructions.

*Sirotiak v. H.C. Price Co.,* 758 P.2d at 1277.

In the present case, despite some degree of equivocation, Thompson ultimately gave the court his good faith assurance that he could be fair and impartial in following the court's instructions. The circumstances of the case provide no basis for questioning this assurance. The focal point of dispute at trial was the sufficiency of the evidence to establish that Young entered the school with intent to steal and that he caused more than $500 in property damage. Although Weatherly's testimony was certainly significant to the state's case, his crime-scene observations were for the most part undisputed, and the case did not turn on his credibility. We conclude that Judge Cranston did not abuse his discretion in denying Young's request to remove Thompson for cause.

## SUFFICIENCY OF EVIDENCE

Young contends that the evidence at trial was insufficient to support his burglary and criminal mischief convictions; he advances separate claims as to each conviction.

### 1. *Burglary—intent to steal*

■ Young's indictment alleged that he committed second-degree burglary by breaking into the school building with intent to steal.[1] Young argues that insufficient evidence was presented at trial to support the conclusion that he acted with intent to commit theft. Young specifically points to uncontroverted evidence indicating that there was money on the floor of the secretary's office and in drawers that he had opened, whereas Young had no school property or money in his possession and none was missing.

In ruling on the sufficiency of evidence at trial, however, we must view all of the evidence in the light most favorable to the state and determine if "fair-minded [jurors] in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt[.]" *Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981); *Siggelkow v. State,* 648 P.2d 611, 613 (Alaska App.1982).

In the present case, the evidence, viewed in this manner, established more than a haphazard or random act of trespass. From the nature and extent of the damage at the rear of the school, the jury could properly conclude that Young's decision to break in was deliberate rather than merely

---

1. Young was charged with violating AS 11.46.-310(a), which provides:

   A person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime in the building.

   The indictment expressly alleged that the crime Young intended to commit was theft.

impulsive. Once inside, Young proceeded by breaking into the secretary's office and then into the principal's office, rummaging through desk drawers as he went. These actions, too, could support the inference that Young's break-in was purposeful and that he was intent on finding property of value. The fact that Young passed up money and property of value after entering the school was countervailing evidence that jurors were certainly entitled to consider in determining his intent; yet given that Young was caught in mid-course, while still rummaging through school property, this was hardly conclusive proof that he did not intend to steal.

Other courts, reviewing functionally indistinguishable facts, have not hesitated to find sufficient evidence to support an inference of intent to steal. *See, e.g., State v. Harper*, 235 Kan. 825, 685 P.2d 850 (1984); *People v. Patterson*, 1 Ill.App.3d 724, 274 N.E.2d 218 (1971). We conclude that, when viewed in the light most favorable to the state, the evidence of intent to steal was sufficient to raise an issue for the jury.

2. *Criminal mischief—value of damage*

Young was charged with criminal mischief in the second degree on the theory that he intentionally caused $500 or more in damage to school property.[2] On appeal, Young asserts that the state failed to prove that the amount of damage he caused equalled or exceeded $500.

■ The amount of damage caused by an act of criminal mischief may be established through evidence showing either diminution in value or reasonable cost of repair. *Willett v. State*, 826 P.2d 1142, 1144 (Alaska App.1992). To determine whether sufficient proof has been presented in a given case, we must view the evidence and the reasonable inferences arising

therefrom in the light most favorable to the state. *Dorman v. State*, 622 P.2d at 453.

■ The state offered into evidence a work proposal and estimate by Bill's Mobile Glass for $483.46 for the replacement of the music room window, the arctic doorway windows, and the secretary's office door window. Other testimony established that the damage Young had caused to the door of the principal's office required that door to be replaced with a door held in stock in the Homer maintenance shop. New hinges and locking hardware for the principal's door were also installed; only the old hinges were usable. A school official estimated that the door with hardware "easily cost $200.00. That's a very conservative figure in my opinion." He also estimated that installation took three hours.

With respect to the $483.46 estimate for glass repair, Young argues that there was no testimony as to whether the school ever paid this amount. However, testimony at trial indicated that the disputed estimate had been sent to the school as the final bill for glass replacement work that was actually done and that it had been approved and submitted for payment to the school's purchasing agent.

Moreover, for purposes of Young's case, the crucial issue was the amount of damage Young caused, not whether the school had actually paid for repair. As we have already indicated, reasonable cost of repair is an acceptable measure of damage; estimates of repair costs are competent evidence of reasonable cost. *See Willett v. State*, 826 P.2d at 1144. Young cites no authority requiring that actual payment be proved as a precondition of establishing reasonable cost of repair, and we are aware of no such requirement.[3]

---

**2.** Young was charged under AS 11.46.482(a), which provides, in pertinent part:

A person commits the crime of criminal mischief in the second degree if, having no right to do so or any reasonable ground to believe the person has such a right,

(1) with intent to damage property of another, the person damages property of another in an amount of $500 or more.

**3.** Young also insists that, since the music-room window may have been broken by someone else on a different occasion, its cost should be deducted from the estimate for purposes of determining whether sufficient evidence was presented. Whether Young broke the music-room window, however, was a factual issue for the jury. Assuming the jury found that Young did break the music-room window—as we must for pur-

With respect to repair costs for damage to the door of the principal's office, Young argues that the $200 estimated replacement cost is inflated because it does not offset the value of hardware salvaged from the old door. Again, however, Young's approach presumes a view of the evidence favorable to his case. When the evidence is properly viewed in the light most favorable to the state, any uncertainty as to the value of replacement door seems inconsequential.

Viewing the evidence favorably to the state, the jury could properly have found that Young caused $483.46 in damages as a result of the windows that he broke. Accordingly, to reach the $500 jurisdictional limit for criminal mischief in the second degree, the jury need only have concluded that the damaged principal's door was worth seventeen dollars or more. Despite the somewhat imprecise value attributed to the damaged door at trial, the evidence of its value, when viewed in the light most favorable to the state, was certainly sufficient to support such a conclusion.

## DOUBLE JEOPARDY

Young lastly contends that the trial court erred in separately convicting and sentencing him for the offenses of burglary and criminal mischief. Young maintains that, because the property damage that supported his criminal mischief charge occurred during the commission of the burglary for which he was convicted, separate punishment for the offenses is precluded by the constitutional prohibition against double jeopardy, as articulated in *Whitton v. State*, 479 P.2d 302 (Alaska 1970).

Young's double jeopardy argument is squarely foreclosed by this court's recent decision in *Coleman v. State*, 846 P.2d 141 (Alaska App.1993) (theft and criminal mischief convictions involving the same property not barred by double jeopardy), as well as by *Mead v. State*, 489 P.2d 738 (Alaska 1971) (allowing separate convictions for burglary and theft of the property for which burglary was committed), upon which we relied in *Coleman*.[4]

## CONCLUSION

For the foregoing reasons, Young's judgment of conviction is AFFIRMED.

poses of determining the sufficiency of the evidence—it could properly include the cost of repairing that window in its assessment of overall damages.

4. Young also claims that separate convictions and sentences are prohibited by the rule of merger articulated in *Tuckfield v. State*, 621 P.2d 1350 (Alaska 1981). In *Tuckfield*, however, the court concluded that the defendant's convictions for rape and assault with intent to commit rape, which arose from a single incident, merged, since, under the circumstances, the assault amounted to a lesser-included offense of the completed rape. *Id.* at 1352–53. *See also Rodriquez v. State*, 741 P.2d 1200 (Alaska App. 1987). The merger doctrine is inapplicable in the context of Young's case, since criminal mischief is not an offense necessarily included in the offense of burglary.