**Lawrence HEATH, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–4123.

Court of Appeals of Alaska.

April 9, 1993.

Margi Mock, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Shelley K. Chaffin, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION

MANNHEIMER, Judge.

Lawrence Heath was convicted of two counts of second-degree sexual abuse of a minor, AS 11.41.436(a)(1), following a jury trial in the Anchorage superior court. Heath appeals his convictions, arguing that the trial judge should have allowed him to introduce evidence that his victim was a virgin. We affirm.

During the summer of 1990, 15–year–old J.A. lived with her foster mother and worked at the Tastee Freeze on Northern Lights Boulevard. One afternoon in July or August, J.A. left work early. As she was walking from one bus stop to another, Heath stopped his car and asked her if she needed a ride. At first, J.A. said no. However, when Heath assured her that he was friendly, J.A. accepted the ride despite her initial hesitation.

Once in the car, Heath began asking J.A. questions about herself, including her name, her workplace, her school, and her age. J.A. told Heath that she was 15 years old. She asked him to drop her off at a bus stop on Dimond Boulevard, and he complied. A few minutes later, however, Heath returned to the bus stop and asked if she wanted a ride home. She accepted.

Heath stopped the car at a bus stop about four houses from J.A.'s home. He then asked J.A. for a kiss. J.A. complied because he had given her a ride. Heath then asked, without explanation, if there was some private place they could go. J.A. pointed to an open field. Heath said that the field was not private enough, and asked for another suggestion. She pointed to a street next to the field. Heath eventually parked his car behind some condominiums.

As Heath and J.A. sat in the car, Heath began kissing J.A. He was soon on top of

her. Heath put his hands down J.A.'s shorts, and J.A. placed her hands over her genitals to prevent Heath from touching her there. Heath asked if he could put his penis inside her. J.A. initially said no, but eventually she consented. After Heath had intercourse with J.A., he took her home.

Following this incident, Heath stopped by the Tastee Freeze three or four times to see J.A.; they exchanged small talk. Heath also called her at home. About a week after the first incident, Heath called J.A. and asked if she wanted to see his apartment. J.A. said yes. As they traveled to the apartment, Heath told J.A. that they had a "secret relationship".

When they arrived at the apartment, Heath and J.A. watched television and drank sodas in the living room. Again they engaged in sexual intercourse. Heath then drove J.A. to work.

During this time, J.A.'s foster mother noticed that J.A. seemed withdrawn and sad, showing less concern for her personal hygiene. To the foster mother, J.A. appeared traumatized. Moreover, J.A. began asking questions about pregnancy and venereal disease. Finally, one evening, J.A. asked if it was illegal for a 30–year–old man to have sex with a 15–year–old girl. J.A. initially said that this question was hypothetical, but then she began crying and said that it had happened. J.A.'s foster mother called the Division of Family and Youth Services. The ensuing investigation resulted in Heath's indictment.

At trial, Heath sought the court's permission to cross-examine J.A. so as to elicit her testimony that she had been a virgin before the first alleged act of intercourse with Heath. By eliciting this evidence, Heath intended to attack J.A.'s credibility. Heath wished to argue to the jury that it was improbable that a 15–year–old virgin would choose to have her first sexual experience with a stranger she had known for only a few hours. The State opposed Heath's request, arguing that Heath was asking the court to disregard Alaska's rape shield statute, AS 12.45.045(a).[1]

Superior Court Judge John Reese denied Heath's request. He found that evidence of J.A.'s virginity would not be relevant to the issues being litigated:

> [T]he policies [for] which the [rape] shield statute was enacted ... revolve around relevancy, as well as quite a bit of effort to prevent the battering of the victims. Here, it would appear that pursuing [J.A.'s sexual] history is not directly relevant to the issues before the Court.... [T]he relevancy argument [that defense counsel] makes ... is confusing.... What you're left with is, simply, impeachment—[that] she perhaps is lying about [the sexual encounters].

> If that [is what] is going to come out, I think that is going to raise more prejudice than probative usefulness, as far as whether the incident makes any sense the way she describes it. So I don't think I will allow inquiry into the history.... It ... seem[s] that the [proposed testimony] would confuse issues substantially, and it doesn't seem relevant.

■ As Judge Reese noted when he denied Heath's request, the basic question is relevancy. Viewing the issue as one of relevance sheds light on the applicability of the rape shield statute, AS 12.45.045(a), to Heath's case. Under Alaska Evidence Rule 401, evidence is relevant if it "make[s]

---

1. AS 12.45.045(a) provides:

In prosecutions for the crimes of sexual assault in any degree, sexual abuse of a minor in any degree, or unlawful exploitation of a minor, or an attempt to commit any of these crimes, evidence of the complaining witness' previous sexual conduct may not be admitted nor may reference be made to it in the presence of the jury except as provided in this section. [The statute then prescribes procedures by which a defendant can seek to admit such evidence.] If the court finds that evidence [of] the sexual conduct of the complaining witness is relevant, and that the probative value of the evidence offered is not outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of the questions that may be permitted. The defendant may then offer evidence under the order of the court.

the existence of any [consequential] fact ... more or less probable". Does the fact that a young woman has not previously engaged in sexual intercourse make it more or less likely that she would engage in sexual intercourse with an attentive and importuning stranger?

■ A trial court's evidentiary rulings are to be overturned only if they constitute an abuse of discretion. *Keogh v. W.R. Grasle, Inc.,* 816 P.2d 1343, 1349 n. 11 (Alaska 1991); *Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980). Abuse of discretion exists only when "the trial court's decision is clearly untenable or unreasonable", *Gonzales v. State,* 691 P.2d 285, 286 (Alaska App.1984). *See also State Farm Insurance Co. v. American Manufacturers Mutual Ins. Co.,* 843 P.2d 1210, 1212 (Alaska 1992) (abuse of discretion exists when the trial court's decision is "manifestly unreasonable"). Thus, Heath's argument to this court is necessarily premised on the assertion that any reasonable person would conclude that a virgin is less likely than other people to consent to intercourse with a stranger. Heath's premise, however, is not self-evident.

That young people with no prior sexual experience can be swayed by the blandishments of more sophisticated adults, there can be no doubt. Judge Reese was not convinced that J.A.'s status as a virgin made it any more likely or unlikely that she would yield to Heath's sexual advances, and Heath presented no data or other evidence to support his argument that the evidence was relevant. Compare *Page v. State,* 657 P.2d 850, 851–53 (Alaska App. 1983), where this court upheld a trial judge's refusal to assume that a person's possession of pornographic books and magazines made it any more or less likely that that person would commit a sexual assault.

When Judge Reese concluded that J.A.'s status as a virgin did not make it any more or less likely that she would consent to have sexual intercourse with Heath, his ruling echoed the premise underlying the rape shield statute. See *Kvasnikoff v. State,* 674 P.2d 302, 306 (Alaska App.1983):

> Until recently, female victims of heterosexual rape suffered under a rule of relevancy which reflected the view that a woman who consented to sex with one individual was more likely to have consented to sex with another. This rule was finally rejected [as] more a creature of ... male fantasy ... than one of logical inference.

See also *State v. Gavigan,* 111 Wis.2d 150, 330 N.W.2d 571, 575 (1983), in which the court noted that use of a victim's chastity or unchastity as evidence of consent or lack of credibility has now largely been abandoned because of the growing recognition that prior willingness to engage in sexual conduct bears no logical correlation to either consent or credibility.

"The primary purpose of the Rape Shield Statute is to prevent the use of evidence of past sexual conduct as proof of the victim's current willingness to consent." *Daniels v. State,* 767 P.2d 1163, 1167 n. 2 (Alaska App.1989). Heath's argument is that people with no prior sexual experience are less likely to consent to a particular act of sexual intercourse. This argument is simply the inverse of the argument the rape shield law was designed to forestall—that people who have sexual experience are more likely to consent to a particular act of sexual intercourse. In fact, Heath's argument (that virgins are less likely to consent) silently rests on this forbidden proposition. Had Heath succeeded in eliciting testimony that J.A. was a virgin, it seems inescapable that he would have ultimately argued to the jury that J.A. should be distinguished from teenagers with sexual experience who would more likely have consented to have sex with Heath.

■ We interpret AS 12.45.045(a) and Evidence Rule 401 to preclude the use of evidence of a victim's lack of sexual experience as circumstantial proof of the victim's current unwillingness to consent to a particular sexual act.[2] *Accord, State v. Gavi-*

---

**2.** We note, however, that evidence introduced for some other relevant purpose does not become inadmissible merely because it tends to show that the victim was a virgin. *See State v. Gavigan,* 330 N.W.2d at 377–78. Compare the cases listed in *Daniels v. State,* 767 P.2d at 1167

*gan,* 330 N.W.2d at 576–77; *People v. Autry,* 321 N.C. 392, 364 S.E.2d 341, 345 (1988). *But see People v. Johnson,* 671 P.2d 1017, 1020 (Colo.App.1983). We thus conclude that Judge Reese did not abuse his discretion when he ruled that Heath's proposed evidence was irrelevant.

The judgement of the superior court is AFFIRMED.

n. 2, holding that evidence of a victim's prior sexual conduct is not admissible when offered as circumstantial proof of the victim's consent, but it may be admissible to prove bias, motive to fabricate, or some other relevant proposition.