Everett E. BRYANT, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8375.

Court of Appeals of Alaska.

June 24, 2005.

Sharon Barr, Assistant Public ·Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

James L. Hanley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Everett E. Bryant was convicted of one count of first-degree sexual abuse of a minor.[1] After the jury returned its verdict, Bryant moved for a new trial on several grounds, including claims that he had received ineffective assistance of counsel. The superior court denied Bryant's motion. Bryant appeals the ruling on the motion for a new trial and several evidentiary rulings during trial.

We uphold the court's evidentiary rulings. We must remand the case to the superior court for additional findings regarding Bryant's claim of ineffective assistance.

1. AS 11.41.434(a)(1).

### Background Facts and Proceedings

Bryant's first trial ended in a mistrial because the jury failed to reach a verdict. The jury at Bryant's retrial found Bryant guilty of first-degree sexual abuse of A.M., a five-year-old girl whose family had resided with Bryant. After the verdict, Bryant obtained another attorney, and the new attorney moved for a new trial on several grounds, including claims that Bryant's trial counsel had provided ineffective assistance. Superior Court Judge Thomas M. Jahnke dismissed several of Bryant's claims of ineffective assistance on the pleadings, but ruled that an evidentiary hearing was necessary to resolve the remaining claims.

Judge Jahnke retired before the evidentiary hearing and Superior Court Judge Larry C. Zervos was assigned to the case. Judge Zervos declined to reconsider most of the claims that Judge Jahnke had already dismissed. Judge Zervos rejected Bryant's remaining claims and denied the motion for a new trial.

*Did the superior court err in denying Bryant's motion to present evidence that the victim's mother had previously made false claims of sexual abuse?*

■ Before the first trial, Bryant moved to admit character evidence under Alaska Evidence Rule 404(a)(2). Specifically, Bryant offered testimony that A.M.'s mother, Nancy Wickline, had previously accused other men of sexually abusing the victim.

Judge Jahnke took Bryant's motion under advisement "awaiting proof" of the alleged false reports to be presented outside the jury's presence. Judge Jahnke returned to the issue several times awaiting Bryant's presentation. At one of these hearings during Bryant's first trial, Judge Jahnke advised Bryant that he had offered "only ... some still relatively vague descriptions of the evidence" and that Bryant needed to make a more specific presentation before Judge Jahnke could rule on the issue.

The next time the court considered the issue during the first trial, Bryant explained that he wanted to explore several allegations

at trial: (1) that A.M.'s sister, C.W., had accused her stepfather of sexually abusing her; (2) that Wickline had once accused a former boyfriend's two sons of abusing A.M.; and (3) that Wickline had told C.W.'s stepfather that men in Virginia, Alabama, and Arkansas had abused C.W. Bryant claimed that the stepfather would testify that he had not abused C.W. and that Wickline had recanted her allegations that her former boyfriend's sons had abused A.M. Bryant also stated that he would like to call Wickline's former boyfriend, but that he could not locate him.

However, Bryant did not present any testimony from either the stepfather or Wickline's former boyfriend in support of his request. Bryant stated that the stepfather was out of state "fishing" and could not be contacted. Bryant also stated that the stepfather had not signed and returned an affidavit that had been sent to him several weeks previously. Wickline's former boyfriend had also refused to sign an affidavit that had been sent to him at a previous address.

Judge Jahnke observed that Bryant had not met his burden for several reasons. First, Judge Jahnke pointed out that the evidence would be offered to impeach the credibility of the victim's mother, not the victim. Second, he stated that the connection between the accusations against Bryant and the earlier accusations was not "readily apparent." Finally, he ruled that the reports of abuse that Bryant sought to use at trial had not been proven false in a manner that was "more or less unequivocal."

Before the retrial that began over three months after the mistrial, Judge Jahnke told the parties that unless there was additional evidence or additional authority he should consider, the rulings from the first trial would apply. Bryant did not present additional evidence or offer additional authority regarding his request to admit evidence of false claims.

On appeal, Bryant argues that Judge Jahnke applied the wrong standard in ruling that Bryant could not introduce evidence relating to Wickline's alleged history of falsely reporting that A.M. had been sexually abused. Specifically, Bryant claims that Judge Jahnke should have applied the preponderance of the evidence standard to determine whether Bryant could present evidence that Wickline had made prior false allegations of abuse.

We review a trial court's evidentiary rulings for an abuse of discretion.[2] A trial court abuses its discretion only when its decision is "clearly untenable or unreasonable."[3]

In *Covington v. State,*[4] we ruled that a defendant in a sexual assault case may introduce evidence that the alleged victim has made prior false accusations if the defendant establishes the falsity of the prior accusations.[5] In *Morgan v. State,*[6] we clarified *Covington* by holding that a defendant must prove the falsity of a prior false accusation of sexual assault by the preponderance of the evidence.[7]

Here, Bryant's argument fails for several reasons. First, although *Morgan* permits a trial judge to admit evidence of prior false accusations made by an alleged victim in a sexual assault case, Bryant did not offer prior false accusations by the victim. Instead, Bryant wanted the court to admit purportedly false accusations made by the victim's mother, Wickline.

We have noted that in a sexual assault prosecution an alleged sexual assault victim's prior false accusation of sexual assault has a special relevance. This relevance removes such evidence from the normal ban on attacking a witness's general character for honesty through the use of specific instances of dishonesty.[8] But we have not ruled that the same special relevance applies to prior false accusations of a witness other than the al-

**2.** *See Hoffman v. State,* 950 P.2d 141, 146 (Alaska App.1997).

**3.** *Heath v. State,* 849 P.2d 786, 788 (Alaska App. 1993) (citations omitted).

**4.** 703 P.2d 436 (Alaska App.1985).

**5.** *Id.* at 442.

**6.** 54 P.3d 332 (Alaska App.2002).

**7.** *Id.* at 339.

**8.** *Id.* at 336.

leged victim, and Bryant has not cited any authority for this proposition.

More importantly, even if evidence of Wickline's alleged prior false reports were admissible, Bryant presented no evidence supporting his request even though Judge Jahnke clearly indicated his willingness to hear such evidence out of the jury's presence. Moreover, Bryant could not actually present the witnesses he claimed would testify that Wickline had made prior false accusations. These witnesses were apparently unwilling to testify voluntarily or impossible to locate and serve with a subpoena. Therefore, the only support Bryant offered was Bryant's attorney's offer of proof. That is insufficient to satisfy Bryant's burden of establishing, by the preponderance of the evidence, that Wickline had made prior false allegations of abuse. Accordingly, we reject Bryant's argument.

*Did the superior court err in admitting rebuttal evidence of Bryant's character?*

Bryant testified at his retrial that he was very concerned with child welfare, and that the idea of sexually abusing A.M. was "beyond [his] scope." After Bryant had testified, the State sought to introduce evidence that Bryant had made inappropriate sexual comments about female children. Specifically, the State offered testimony that C.W. heard Bryant comment about her breasts when she was fourteen years old. The State also wanted to present testimony from Cody Hughes, a former boyfriend of Wickline, that when Hughes and Bryant drove past several ten- or twelve-year-old girls, Bryant asked "wouldn't you like to throw your worm out there?" The State also offered C.W.'s testimony that Bryant had touched her several times on her breasts and buttocks. The State argued that this evidence was relevant to rebut Bryant's claim that he would never think about sexually abusing a child.

Judge Jahnke ruled that the State could present evidence of the comments Bryant had made about C.W. and the school-aged girls, but he rejected the State's request to present the testimony that Bryant had touched C.W. Judge Jahnke reasoned that

evidence of the comments was appropriate to rebut the "image ... painted in [Bryant's] testimony with a very broad brush of someone ... who is very concerned about the welfare of children[.]" But Judge Jahnke reasoned that evidence of the touching was less probative because it involved a post-pubescent female rather than a young girl, and that its probative value was therefore outweighed by the potential for prejudice.

■ On appeal, Bryant argues that Judge Jahnke erred in determining that the evidence was appropriate rebuttal evidence. Specifically, Bryant claims that he was being charged with molesting a five-year-old girl, and that he "did not discuss any of his feelings toward pre-teen or teenage girls" in his testimony. Bryant argues that evidence of his sexual comments about ten- to fourteen-year-old girls was irrelevant.

■ Alaska Evidence Rule 404(a) provides that "evidence of a person's character or a trait of character is not [generally] admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]" Alaska Evidence Rule 404(b)(1) extends this prohibition to evidence of a person's "other crimes, wrongs, or acts [that are solely offered] to prove the character of a person in order to show that the person acted in conformity therewith." Therefore, evidence of a person's prior bad acts, like other forms of character evidence, is not generally admissible in court if it is offered as illustrative evidence of the person's character.

But if a defendant introduces evidence of his or her good character, the prosecution may rebut the evidence of good character by offering evidence of specific incidents that tend to rebut the defendant's evidence of good character.[9]

In Bryant's case, the State offered evidence that Bryant had made sexual statements about young girls to rebut Bryant's testimony about his benevolent non-sexual attitude about children. Bryant testified that he had previously been employed as a counselor to teenagers who had been victims

9. *Salud v. State,* 630 P.2d 1008, 1011 (Alaska App.1981).

of sexual abuse. He also testified that he had volunteered for a number of local charitable organizations, and that he regularly donated food and supplies to child care centers. When he was questioned ·about his attitude toward children, Bryant stated that children had "no reason not to" trust him, and that the idea of sexually touching A.M. was "beyond [his] scope."

In other words, ·Bryant testified that he was concerned for and involved with children of all ages (including teens), and that children in general had no reason to distrust him. Judge Jahnke ruled that Bryant's prior comments about young females were admissible to rebut Bryant's "broad" claims about his concern for children. Given Bryant's statements about his attitudes· toward children, Judge Jahnke was justified in concluding that the evidence that Bryant had previously made sexual comments about ten- to fourteen-year-old girls was admissible as rebuttal evidence. His decision to admit the evidence did not constitute an abuse of discretion.

■ Bryant next argues that the superior court erred because the evidence was more prejudicial than probative and thus should have been excluded under Evidence Rule 403. Specifically, Bryant argues that the evidence had limited probative value because it related to comments he had made toward "teenage and preteen girls" rather than toward girls A.M.'s age. Bryant then argues that the evidence was extremely prejudicial, because it portrayed him as a "sexually obsessed sleazy man."

The record indicates that Judge Jahnke carefully considered the potential for prejudice associated with the challenged evidence before he allowed it to be admitted. Judge Jahnke ruled that the evidence of the comments that Bryant had made was probative because it rebutted "the general image that was created ... by testimony about Mr. Bryant's beliefs about kids ... an image that was created of everybody's Uncle Everett." Judge Jahnke also specifically concluded that the probative nature of the challenged evidence outweighed the potential for prejudice associated with that evidence. Bryant has failed to demonstrate that Judge Jahnke's determinations were "clearly untenable or unreasonable." [10] We conclude that Judge Jahnke's ruling that the evidence was admissible was not an abuse of discretion.

■ Finally, Bryant argues that Judge Jahnke erred in failing to give the jury a limiting instruction to ameliorate the effects of the evidence relating to his prior statements. Bryant claims that this court's decision in *Bingaman v. State*[11] dictates that such an instruction must be given whenever prior bad acts evidence is offered against a defendant.

We addressed a similar argument in *Inga v. State*.[12] In *Inga*, the defendant argued that the trial court had erred in failing to issue a limiting instruction after prior bad acts evidence had been introduced at his trial.[13] Noting that *Bingaman* had been decided after Inga's trial, and that Inga had failed to request a limiting instruction from the trial court, this court ruled that the trial judge had not erred in failing to issue a limiting instruction at Inga's trial.[14]

Both of these considerations are also present in Bryant's case. Bryant's trial, like Inga's, had been held before this court issued its opinion in *Bingaman*. And Bryant, like Inga, did not request a limiting instruction at trial. We conclude that Judge Jahnke did not err in failing to issue a limiting instruction at Bryant's trial.

*The ineffectiveness claim relating to. the failure to challenge Juror Fulk*

■ During jury selection at the second trial, the parties conducted voir dire of potential juror Steven· Fulk outside the presence of

**10.** *See Heath*, 849 P.2d at 788.

**11.** 76 P.3d 398, 416–17 (Alaska App.2003).

**12.** Alaska App. Memorandum Opinion and Judgment No. 4846 at 6–7 (Mar. 31, 2004), 2004 WL 719626 at *3–4.

**13.** *Id.* at 6, 2004 WL 719626 at *3.

**14.** *Id.* at 6–7, 2004 WL 719626 at *3–4.

the panel. Fulk disclosed that he was a good friend of Trooper Robert Cox, who investigated the case and was one of the State's trial witnesses. Fulk testified that Trooper Cox had stayed with Fulk and his family while Cox was in Ketchikan for Bryant's first trial and that Trooper Cox was again staying at Fulk's home during Bryant's second trial. Fulk also revealed that he had personal experience in his family with a case of sexual abuse that appeared to be similar to Bryant's, and was cognizant of the difficulty such cases present. Under questioning from Bryant, Fulk stated that he would not give extra weight to Trooper Cox's testimony.

Judge Jahnke asked both parties if either wished to challenge Fulk for cause. Bryant's attorney said that the defense did not wish to challenge Fulk for cause and the record shows that Bryant did not exercise a peremptory challenge for Fulk.

The record shows that Bryant and his attorney had conflicting factual claims on what transpired between them on whether to challenge Fulk. The attorney indicated that he gave his clients the final decision on every juror. Consistent with this practice, the trial attorney maintained that he had given Bryant the option of whether to challenge Fulk because the attorney was impressed with Fulk's voir dire answers. Bryant contended that he had told his attorney that he did not want Fulk to serve on the jury.

In either circumstance, whether the trial attorney chose not to challenge Fulk or followed Bryant's election to not challenge Fulk, the decision represented a tactical choice on the part of the trial attorney. To prevail on the claim, Bryant would have to overcome the strong presumption of competence that attaches to an attorney's tactical choice.[15]

Judge Jahnke dismissed Bryant's claim that his trial attorney was ineffective for not removing juror Fulk without reaching the issue of the attorney's tactical choice. Judge Jahnke ruled that it was "not per se ineffective assistance of counsel to allow ... a person to serve as a juror who is a friend and temporary lodging host of the investigating officer of the case." He continued, "[a]t the very least, before a court will call into question the validity of a conviction by the jury, there must be a relatively detailed allegation of prejudice." Judge Jahnke concluded that Bryant's motion did not plead any prejudice, so he dismissed this issue. Bryant asked Judge Zervos to reconsider Judge Jahnke's ruling, but Judge Zervos refused.

Bryant argues that Judge Jahnke erred in dismissing the claim that his trial attorney was ineffective for failing to discharge juror Fulk. Bryant claims that the decision not to remove Fulk from the jury was incompetent and that no particularized showing of prejudice is required.

■ As we noted in *Billy v. State*,[16] "a defendant who alleges ineffective assistance of counsel must do more than present a mere conclusory or speculative allegation of harm." [17] A mere statement that an "attorney's mistakes must have affected the result" is insufficient to meet this burden.[18] Here, Bryant's only allegation of prejudice was a statement that "[the attorney's errors] contributed to [his] conviction." Bryant did not allege how his trial attorney's decision not to challenge Fulk prejudiced him.

On appeal, Bryant argues that Fulk was obviously biased because he knew Trooper Cox, and that such bias would necessarily have prejudiced Bryant. However, we have ruled that a defendant claiming juror bias must present evidence demonstrating bias. In *Young v. State*,[19] a defendant asked that a potential juror be removed for cause because the juror was acquainted with the investigating officer and had initially expressed doubts about his ability to view the officer's testimony impartially.[20] After questioning by the court, however, the juror stated that he could

---

**15.** *See Tall v. State,* 25 P.3d 704, 708 (Alaska App.2001).

**16.** 5 P.3d 888, 889 (Alaska App.2000).

**17.** *Id.* at 889 (quotation omitted).

**18.** *Id.*

**19.** 848 P.2d 267 (Alaska App.1993).

**20.** *Id.* at 268–69.

"take [the officer's] testimony and treat it without [consideration of his] previous contact with [the officer]."[21] The trial court refused to excuse the juror for cause. On appeal, Young claimed the trial court erred by refusing to excuse the juror. We understood Young to argue that if the trial record contained any indication of a juror's potential bias, it was an abuse of discretion to allow the juror to remain unless the record contained an unequivocal assurance of the juror's impartiality.[22] But we rejected Young's claim, noting that the Alaska Supreme Court had expressly declined that standard.[23]

Here, the record shows that juror Fulk testified that he could be impartial. During voir dire, when asked whether he would be able to analyze Trooper Cox's testimony fairly, Fulk stated that he would not give Trooper Cox's testimony any more weight than that of the other witnesses. Furthermore, Judge Jahnke admonished both Fulk and Trooper Cox that they were not to discuss the case. Trooper Cox later stated in a sworn affidavit that he and Fulk did not discuss the case with one another during the trial. Bryant did not plead any facts to rebut this evidence.

As stated above, an ineffective assistance of counsel claim must include an allegation of prejudice, an allegation that counsel's mistake contributed to the defendant's conviction.[24] Bryant did not plead any prejudice. Various pleadings filed by the State over the course of the years that Bryant's motion was pending pointed out the requirement that an ineffective assistance of counsel claim include an allegation of prejudice. These pleadings also pointed out that Bryant had not alleged any prejudice regarding Fulk's presence on the jury. Nevertheless, Bryant did not discuss the State's point in any of his pleadings, or cite any contrary authority.

Now, on appeal, Bryant asserts that "[a]llowing a biased juror to remain on the jury panel violated Mr. Bryant's constitutional rights to an impartial jury." Bryant cites *Dyer v. Calderon*[25] as support for this assertion. But the majority opinion in that case concluded that a juror at Dyer's trial had lied when initially answering voir dire questions to ensure that she was selected for the jury, and again lied when questions about her impartiality were raised before the penalty phase of her trial to ensure that she remained on the jury.[26] Because this juror lied repeatedly about matters relating to her qualifications to serve, the majority presumed that the juror was biased.[27]

Bryant did not claim that Fulk lied during voir dire or concealed any pertinent information about his qualification to serve. Instead, Bryant argues that Fulk's voir dire established that Fulk was a biased juror. But viewed as a whole, Fulk's voir dire testimony does not establish a record that permits an appellate court to presume that Fulk was a biased juror.

Bryant also cites *Hughes v. United States.*[28] In *Hughes*, the appellant claimed he had received ineffective assistance of counsel because his attorney did not ask any follow-up questions or challenge a prospective juror for cause after the juror testified during voir dire that she did not think that she could be a fair juror.[29] Because the record showed that the juror said she could not be fair, the majority of the *Hughes* court presumed that the juror was biased and found that counsel was objectively unreasonable for not asking the juror any follow-up questions.[30] The majority also concluded that there was "a complete lapse by the trial court ... in carrying out its obligation on

**21.** *Id.* at 269.

**22.** *Id.* at 270.

**23.** *Id., quoting Sirotiak v. H.C. Price Co.,* 758 P.2d 1271, 1277 (Alaska 1988).

**24.** *State v. Jones,* 759 P.2d 558, 572–73 (Alaska App.1988).

**25.** 151 F.3d 970 (9th Cir.1998).

**26.** *Id.* at 979.

**27.** *Id.* at 983.

**28.** 258 F.3d 453 (6th Cir.2001).

**29.** *Id.* at 456–57.

**30.** *Id.* at 462.

voir dire." [31]

Bryant's case contrasts with the record in *Hughes*. Bryant's attorney, the prosecutor, and Judge Jahnke all questioned Fulk. Bryant's attorney questioned Fulk about his contact with Trooper Cox and whether he would give Cox's testimony more weight than other witnesses. After receiving Fulk's assurances that he would not give Cox's testimony any more weight than other witnesses, and after Fulk had testified that he would decide the case based on the evidence presented at trial, Bryant's attorney waived any challenge for cause against Fulk.

Finally, Bryant relies on a quote from *State v. Miller*:[32]

> Actual bias can be shown either by a juror's own admission or by proof of specific facts which show the juror has such a prejudice or connection with the parties at trial that bias is presumed.[33]

But this quote from *Miller* is contained in a discussion of what factors a trial judge must consider when a party challenges a juror for cause. As we have noted several times already, Bryant did not challenge Fulk for cause.

Furthermore, Bryant's claim begs the question of whether Fulk was a biased juror. During voir dire, Fulk explained his connection to Trooper Cox, and the parties and the court explored his ability to serve on the jury. Under Criminal Rule 24(c), a party can challenge a prospective juror for any of the enumerated reasons in Rule 24 including (c)(2), that the juror is "biased for or against a party or attorney." But Bryant did not challenge Fulk, so the superior court never ruled that Fulk was biased.

Moreover, Bryant alleged no facts to show that Fulk was a biased juror while litigating the motion for a new trial, nor did he allege any facts to show that Fulk's service on the jury resulted in an unfair trial. In a separate claim, Bryant did allege that Fulk had committed misconduct by discussing the case with Trooper Cox in a courthouse elevator during the trial, but Judge Zervos rejected that claim after the evidentiary hearing, finding that the alleged misconduct had never happened. Bryant has not challenged this ruling. Other than that one misconduct allegation, Bryant did not claim that Fulk violated any of Judge Jahnke's admonishments or in any other way engaged in misconduct during his service as a juror.

Finally, as we just noted, Bryant did not show or attempt to show that Fulk was unfair or that some other juror was unfair as a result of Fulk's presence on the jury.[34] Nor did Bryant claim that any violation of a juror's duty led to an unfair trial.[35]

Bryant has not established that he was prejudiced by his trial attorney's decision not to challenge Fulk. Therefore, Judge Jahnke did not err in dismissing Bryant's claim that he was entitled to a new trial because his trial attorney did not attempt to discharge juror Fulk.

Moreover, Judge Jahnke dismissed Bryant's claim on the ground that Bryant had not pleaded how he was prejudiced by Fulk's jury service. In addition, the record shows that Bryant's attorney elected not to challenge Fulk. When an attorney makes a tactical choice, a party claiming ineffective assistance of counsel must plead facts that demonstrate that the tactic was unreasonable, that is, that the tactic was one that no competent attorney would use.[36]

### The trial attorney's failure to subpoena Joe Schacher

Bryant next claims that Judge Zervos erred in finding that his trial attorney had not been ineffective for failing to subpoena Joe Schacher to testify at the second trial

---

**31.** *Id.* at 464.

**32.** 197 W.Va. 588, 476 S.E.2d 535 (1996).

**33.** *Id.* at 552.

**34.** *See Hammock v. State*, 52 P.3d 746, 750 (Alaska App.2002); *Minch v. State*, 934 P.2d 764, 769 (Alaska App.1997).

**35.** *See West v. State*, 409 P.2d 847, 852 (Alaska 1966).

**36.** *See State v. Laraby*, 842 P.2d 1275, 1279 (Alaska App.1992).

or, in the alternative, after Schacher failed to appear at the second trial, to offer Schacher's testimony from Bryant's first trial at the second trial.

Judge Zervos found that Bryant's trial attorney had not been ineffective in failing to subpoena Schacher, Bryant's great nephew, to the second trial. Judge Zervos found that Schacher had appeared to be cooperative with the defense before the second trial, and that it had not been clear that his testimony would be necessary. Judge Zervos also found that, once it became obvious that Schacher might not voluntarily appear, Bryant's trial attorney took competent steps to secure his attendance by issuing a subpoena and attempting to have it served on Schacher.

In Bryant's trial attorney's deposition, the attorney testified about his failure to subpoena Schacher to testify at Bryant's second trial. The attorney stated that Schacher had been present to testify at the first trial, and that he had not anticipated problems in obtaining Schacher's testimony for the second trial. Bryant's trial attorney knew that Schacher and Bryant were close and that Bryant had done several favors for Schacher. In addition, the trial record indicates that Schacher had actually been residing in Bryant's home until the night before he was scheduled to testify, and that Bryant had assured his trial attorney that Schacher would be available for trial. The trial record also indicates that when Bryant's trial attorney realized that Schacher would not appear for trial as scheduled, the attorney asked for a continuance, obtained a subpoena, and employed a process server to attempt to serve Schacher with the subpoena.

In order to prove that Bryant's trial attorney was ineffective for failing to subpoena Schacher, Bryant must demonstrate that no reasonably competent attorney would have performed as his attorney did.[37] The evidence indicates that the attorney had reason to believe that Schacher would voluntarily appear at trial and that when it became clear

that this belief was mistaken, the attorney attempted to compel Schacher to testify by serving him with a subpoena. Bryant did not demonstrate that no competent attorney would have acted as his trial attorney did. Thus, Judge Zervos did not err when he found that the trial attorney was not ineffective for failing to subpoena Schacher to testify at Bryant's second trial.

Judge Zervos did not issue a ruling on the second component of Bryant's claim—that Bryant's trial attorney was ineffective for failing to offer Schacher's testimony at the first trial into evidence at the second trial. Normally, an appellant may only appeal issues on which he has obtained an adverse ruling from the trial court.[38] The record reflects that Bryant failed to request a ruling on the question of whether his trial attorney's failure to offer Schacher's testimony at the second trial constituted ineffective assistance. Therefore, Bryant has waived this issue for purposes of appeal.[39]

*The trial attorney's decision not to call Jim Lewis to testify*

Bryant next claims that Judge Zervos erred in rejecting his claim of ineffective assistance of counsel based on his trial attorney's decision not to call Jim Lewis as a witness at Bryant's second trial. Bryant claims that Lewis could testify to two pieces of information that were pivotal to his defense—(1) that Wickline had reported that A.M. alleged that Bryant was sexually abusing her one month before the allegations were reported to state troopers and (2) that Wickline had told Lewis that she intended to "take [Bryant] for everything he had."

This issue may turn on a factual dispute that Judge Zervos did not resolve. Bryant claimed that his attorney knew the substance of Lewis's testimony that Bryant argues his attorney should have presented. However, the trial attorney contended in his deposition that he considered calling Lewis for a limited purpose, as a rebuttal witness in the event the State offered evidence about a prior bad

**37.** See *Jones,* 759 P.2d at 568.

**38.** See, e.g., *Mahan v. State,* 51 P.3d 962, 966 (Alaska App.2002).

**39.** See *id.*

act—that Bryant had purportedly molested one of Lewis's daughters while camping. Because the State did not offer evidence of that purported misconduct, the trial attorney decided that there was no need to call Lewis. The attorney did not recall interviewing Lewis about his claim that Wickline had told him earlier about the abuse and expressed a plan to ruin Bryant financially.

It is not clear from Judge Zervos's decision whether he implicitly found that the trial attorney knew of Lewis's testimony that could potentially impeach Wickline. If Bryant's attorney did not know of Lewis's testimony, then this claim fails. (Bryant did not allege that his attorney incompetently investigated the case.)

Even so, Judge Zervos found that the trial attorney had made a mistake in failing to offer Lewis's testimony because Lewis's potential testimony "would have supported the defense theory." But it is not apparent from our review of Judge Zervos's decision what type of mistake Bryant's attorney made, because effective assistance of counsel does not guarantee error-free representation. In order to constitute ineffective assistance of counsel, a trial attorney's performance must fall below the nadir of the range of competence of attorneys of ordinary training and skill in criminal law.[40] This analysis requires a court considering an incompetence claim to compare the performance of the trial attorney with the standard of competence—the range of reasonable actions that might be taken by an attorney of ordinary training and skill in criminal law.[41] The findings must also address how a trial attorney failed to meet that standard of care, and must discuss the facts that rebut the presumption that the trial attorney's decisions were grounded in sound tactical considerations.[42] If the defendant convinces the court that the attorney failed to perform competently, the defendant must additionally demonstrate that there is at least a reasonable possibility that the attorney's lack of competency contributed to the defendant's conviction.[43]

Bryant's attorney made the tactical choice not to call Lewis. To prevail on his ineffective assistance claim, Bryant must affirmatively rebut the strong presumption of competence that attaches to an attorney's tactical choices.[44] Thus, Bryant was obliged to plead and to prove that no competent attorney would have decided not to call Lewis.[45]

Judge Zervos did not enter specific findings on the issues of the standard of competence of an attorney of ordinary training and skill in criminal law and how Bryant's attorney's performance fell below the nadir of that range. Furthermore, Judge Zervos did not enter findings on what evidence Bryant had presented that overcame the presumption of competence that attached to the attorney's decision *not to call* Lewis.

Although Judge Zervos concluded that it was "not reasonably possible" that the trial attorney's failure to call Lewis as a witness had contributed to Bryant's conviction, we must have Judge Zervos's findings on the first *Risher* prong to consider Bryant's claim properly. Therefore, we must remand the case for the findings that we discussed above.

*The failure to offer Bryant's Navy SEAL Certificate into evidence*

Finally, we address Bryant's claim that Judge Zervos improperly rejected his claim that he had received ineffective assistance because his trial attorney did not offer in evidence a certificate indicating that Bryant had gone through Navy SEAL training. On this issue, Judge Zervos also found that the trial attorney had made a mistake in failing to offer the certificate.

Judge Zervos did not provide any findings comparing Bryant's trial attorney's performance with the standard of practice of a com-

---

40. *See Risher v. State*, 523 P.2d 421, 424 (Alaska 1974).

41. *See State v. Zeciri*, 43 P.3d 169, 171 (Alaska App.2002).

42. *Id.*

43. *See Risher*, 523 P.2d at 425.

44. *See Jones*, 759 P.2d at 569–70.

45. *See Tucker v. State*, 892 P.2d 832, 835 (Alaska App.1995).

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

petent attorney, nor specify what facts overcome the presumption of competence that attaches to a trial attorney's tactical choices.

Judge Zervos did rule that the trial attorney's failure to offer the certificate had not prejudiced Bryant. Apparently Judge Zervos thought that the certificate would likely have been ruled inadmissible hearsay, and even if it had been admitted, the certificate would have played "a very small role in the trial."

Bryant, as the proponent of the certificate, had the obligation to show that the certificate was admissible. If the certificate was not admissible, then that resolves the issue, because it is not ineffective assistance to fail to offer inadmissible evidence. Because of these potential ambiguities in Judge Zervos's decision, we must remand the case for additional findings in order to properly consider Bryant's claims.

### Conclusion

We affirm the superior court's evidentiary rulings. We remand the case to the superior court for additional findings on the ineffective assistance claims we discussed above. The superior court shall transmit its additional findings within 75 days. When the superior court transmits its findings, the parties shall have 30 days to submit simultaneous memoranda addressing those findings. We retain jurisdiction.

MANNHEIMER, Judge, concurring.

MANNHEIMER, Judge, concurring.

I write separately to explain the facts pertaining to the issue of whether Bryant's trial attorney should have peremptorily challenged Juror Fulk.

As described in the lead opinion, the record shows that Juror Steven Fulk was a good friend of the main investigating officer in Bryant's case, Trooper Robert Cox. In previous years, when Cox lived in Ketchikan, the two men attended the same church and went fishing together. By the time of Bryant's trial, Trooper Cox had been transferred away from Ketchikan, but Cox and Fulk remained friends. Cox stayed with the Fulk family during Bryant's trial.

Even though Juror Fulk declared that he could set aside his friendship with Cox, and that he could fairly weigh Cox's testimony along with the other evidence in the case, Fulk's close friendship with Cox would seemingly counsel any defense attorney to get rid of Fulk. However, Fulk's answers during voir dire also revealed a reason why he might be considered a favorable juror for the defense.

During voir dire, Fulk described in an incident in which a close family member was suspected of sexually abusing Fulk's son. Fulk stated that he still was not sure whether anything improper had happened, but no prosecution was ever pursued, and he was still on speaking terms with this family member. Fulk declared that, based on this incident, he had learned the lesson that, while children might have a good reason for complaining about an adult's actions, the complaint might arise from the child's misunderstanding of innocent conduct.

Fulk's experience—the fact that a member of his own family had been suspected of sexual abuse, based on an apparent misunderstanding—was a good reason why a defense attorney might want to keep Fulk on the jury in Bryant's case. Thus, the ultimate decision facing Bryant's attorney—to challenge Fulk, or to leave him on the jury—rested on weighing Fulk's friendship with Trooper Cox against Fulk's prior experience with an unfounded accusation of sexual abuse against a family member. Faced with this quandary, a defense attorney could reasonably decide that the potential benefit of leaving Fulk on the jury outweighed the risk stemming from Fulk's friendship with the trooper.